RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 3/3/10

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Cr. No. 10-0200-01/02 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ROBERT E. STEVENS AND ARTHUR GILMORE, JR. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court are Defendant Arthur Gilmore, Jr.'s ("Gilmore") "Motion to Sever Trial of Defendant from Co-Defendant's Trial Because of Prejudicial Joinder" ("Motion to Sever") [Doc. No. 37], "Motion to Dismiss Count 1 of the Indictment" ("Motion to Dismiss") [Doc. No. 39], and "Motion for Bill of Particulars" [Doc. No. 40]. Defendant Robert E. "Red" Stevens ("Stevens") has joined in each of the motions filed by Gilmore. [Doc. Nos. 36 & 43]. The Government has filed an "In Globo Response to Defense Motions" [Doc. No. 48]. Gilmore filed a "Reply to Government's In Globo Response to Defense Motions" ("Reply") [Doc. No. 52].

For the following reasons, Defendants' motions are DENIED.

## ALLEGED FACTS

Gilmore and Stevens are charged in a two-count Indictment with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and the Hobbs Act, 18 U.S.C. § 1951. During the relevant time period of the Indictment, Gilmore and Stevens served as elected councilmen on the five-member Monroe City Council. The

Government contends the evidence will show that both Defendants assisted a cooperating witness ("CW") in specific matters coming before the City of Monroe in exchange for cash payments and other consideration. The Government seeks to prove that Gilmore and Stevens engaged in a criminal enterprise in order to enrich themselves via bribes in violation of RICO. In Section F of Count 1 of the Indictment, the Government identifies nine predicate acts of racketeering activity, upon which the RICO charges are based:

 (1) Beginning on or about February 21, 2008, and continuing through February 28, 2008, Stevens committed public bribery by accepting and offering to accept $1,000.00 from the CW for assisting the CW in specific matters pending before the Board of Adjustments;

 (2) Beginning on or about February 14, 2008, and continuing through March 27, 2008, Gilmore committed public bribery by accepting and offering to accept $1,000.00 and other valuable consideration from the CW for assisting the CW in specific matters coming before the City of Monroe;

 (3) Beginning on or about April 2, 2008, and continuing through March 2, 2009, Gilmore committed public bribery by accepting and offering to accept a reduced purchase price for land from the CW for assisting the CW in specific matters coming before the City of Monroe;

 (4) Beginning on or about June 10, 2008, and continuing through June 19, 2008, Stevens committed public bribery by accepting and offering to accept $500 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(5) On or about July 1, 2008, Gilmore committed public bribery by accepting and offering to accept $230.00 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(6) Beginning on or about December 6, 2008, and continuing through December 18, 2008, Stevens committed public bribery by accepting and offering to accept $800 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(7) Beginning on or about March 25, 2009, and continuing through April 7, 2009, Stevens committed public bribery by accepting and offering to accept $3,000.00 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(8) Beginning on or about August 25, 2009, and continuing through August 28, 2009, Gilmore committed public bribery by accepting and offering to accept $207.00 from the CW for assisting the CW in specific matters coming before the City of Monroe; and

(9) Beginning on or about December 11, 2009, and continuing through December 17, 2009, Stevens committed public bribery by accepting and offering to accept $1,000.00 for assisting the CW in specific matters coming before the City of Monroe.

[Doc. No. 1].

The Government also contends that Defendants violated the Hobbs Act by obtaining property not due to them under color of official right.

In support of the charges against Defendants, the Government will present recordings of conversations between the CW and Gilmore and between the CW and Stevens.

## LAW AND ANALYSIS

### A. Motion to Sever

Although Defendants admit they were properly joined for trial under Federal Rule of Criminal Procedure 8(b), they move to sever their trials on the basis of prejudice pursuant to Federal Rule of Criminal Procedure 14(a). They contend that a severance is necessary because the evidence is "so clearly inter-related that it will be extremely difficult for the trier of fact to compartmentalize the evidence with respect to each defendant." [Doc. No. 37, p. 2]; *see Bruton v. United States*, 391 U.S. 123 (1968). Defendants further contend that the introduction of recordings of a potentially non-testifying co-defendant about activities similar to those of the other defendant "creates a severe *Bruton* problem." [Doc. No. 37, p. 2]. If the recordings of both Defendants are used at trial, then each Defendant contends that he will not be able to cross-examine his Co-Defendant if that Co-Defendant elects not to testify.

The Government responds that severance under Rule 14 is not necessary because the case is not so complex nor the evidence so overlapping that jurors will have difficulty compartmentalizing the evidence against each Defendant. To the contrary, the Government points out that the CW dealt with each Defendant alone, so that only one Defendant is on tape at any time. Although the Government admits that a Co-Defendant may be mentioned as someone the CW has dealt with or referred to as a city councilman, the Government argues that any potential prejudice can be addressed with proper limiting instructions. Additionally, the Government argues that there is no *Bruton* problem because neither Defendant confessed and

implicated his Co-Defendant. The Government notes that Defendants' statements on the recordings are admissible, non-testimonial co-conspirator statements.

The Fifth Circuit has consistently held that when persons are indicted together, they should be tried together. *United States v. McKinney,* 53 F.3d 664 (5th Cir. 1995); *United States v. Wilwright,* 56 F.3d 586 (5th Cir. 1995). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States,* 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh,* 481 U.S. 200, 210 (1987)); *see also United States v. Richardson,* 167 F.3d 621, 624 (D.C. Cir. 1999) ("Joint trials are favored in RICO cases.").

Rule 14 of the Federal Rules of Criminal Procedure provides that a court may grant a severance of defendants when it appears that a defendant will be prejudiced by a joint trial. FED. R. CRIM. P. 14. To justify severance of co-defendants, the movant must show that he would suffer specific and compelling prejudice against which the court is unable to provide protection, such as through a limiting instruction, and that this prejudice would result in an unfair trial. *United States v. Kaufman,* 858 F.2d 994, 1003 (5th Cir. 1988) (citing *United States v. Toro,* 840 F.2d 1221, 1238 (5th Cir. 1988)); *see also United States v. Lewis,* 476 F.3d 369, 383 (5th Cir. 2007) (citing *United States v. Sudeen,* 434 F.3d 384, 387 (5th Cir. 2005)). Defendants in a joint RICO trial "occupy 'an uneasy seat,'" but the mere fact that "'[i]t is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together,'" does not justify severance. *United States v. DeCologero,* 530 F.3d 36, 53 (1st Cir. 2008) (quoting *Krulewitch v. United States,* 336 U.S. 440, 454 (1949) (Jackson, J., concurring)). That is, "[a] spillover effect, by itself, is an insufficient

predicate for a motion to sever." *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002). "A district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

The Court finds no compelling reason for severance in this case. With regard to the interrelation of the evidence, the Court believes that the jury, with proper instruction, can separate and consider the Government's case against each Defendant. Therefore, this concern is insufficient to justify severance.

Defendants also raised Confrontation Clause issues under both *Crawford v. Washington*, 541 U.S. 36, 68 (2004), and *Bruton*. The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford*, the Supreme Court held that the Sixth Amendment bars the admission of testimonial hearsay[1] against a criminal defendant unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. 541 U.S. at 68. For a statement to be "testimonial" within the meaning of *Crawford*, it must have been made "'under circumstances which would lead an objective witness reasonably to believe that the

---

[1] Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

541 U.S. at 51-52 (internal quotation marks and citations omitted).

statement would be available for use at a later trial.'" *Melendez-Diaz. v. Massachusetts*, 129 S. Ct. 2527, 2532 (2009) (quoting *Crawford*, 541 U.S. at 52) (internal quotation marks omitted).[2]

However, "*Crawford* involved the admission of an unavailable witness's out-of-court statement in a single-defendant trial." *United States v. Ramos-Cardenas*, 524 F.3d 600, 609 (5th Cir. 2008) (citing 541 U.S. at 68). "[W]hile Crawford certainly prohibits the introduction of a co[-]defendant's out-of-court testimonial statement against the other defendants in a multiple-defendant trial, it does not signal a departure from the rules governing the admittance of such a statement against the speaker-defendant himself, which continue to be provided by *Bruton*, *Richardson* [*v. Marsh*, 481 U.S. 200, 202-03 (1987)], and *Gray* [*v. Maryland*, 523 U.S. 185, 188 (1998)]." *Id.* at 609-10 (citations omitted).

When an out-of-court statement was made by a defendant, it is typically classified under the Federal Rules of Evidence as an admission, not hearsay, and may be admitted against him. *See* FED. R. EVID. 801(d)(2). In a multi-defendant trial, the Supreme Court's decision in *Bruton* limits the admission of the statement against a co-defendant. In *Bruton*, the Supreme Court held that a criminal defendant's confrontation right is violated where a hearsay confession by his co-defendant that is "powerfully incriminating" against the defendant is admitted into evidence, and the co-defendant does not testify. 391 U.S. at 126. In this situation, limiting instructions alone are not an adequate remedy. *Id.* at 137. *Bruton*, however, applies only to statements that

---

[2] In his Reply, Gilmore chastises the Government for failing to acknowledge the Supreme Court's *Melendez-Dias* decision. However, this case adds little to the analysis. As the Supreme Court pointed out, *Melendez-Dias* was a "rather straightforward application of [the] holding in Crawford." 129 S. Ct. at 2532-33.

7

are facially inculpatory. *See Richardson*, 481 U.S. at 207. Confessions that are only "incriminating by connection" to other evidence are not excluded under *Bruton*. *See id.* at 209.

Moreover, the Confrontation Clause is not violated by admission of a non-testifying co-defendant's confession with a proper limiting instruction when the confession is redacted to eliminate any inculpatory reference to the defendant. *See Richardson*, 481 U.S. at 202-03 (A defendant's Confrontation Clause rights were not violated by the admission of a co-defendant's confession that was redacted to omit any reference to the other defendant, as well as any indication that anyone other than the co-defendant and an identified third party (who was not on trial) participated in the crime); *cf. Gray*, 523 U.S. at 188 (holding that a defendant's Confrontation Clause rights were violated by the admission of a co-defendant's confession that was redacted by replacing the defendant's name with blank spaces and, when read into evidence at trial, the word "deleted" or "deletion").

Defendants failed to provide the Court with statements contained on the recordings, but the Government did so, identifying twenty (20) conversations between the CW and Stevens, which refer to Gilmore. In the Reply, Gilmore appears to challenge eleven (11) of those calls as causing a Confrontation Clause problem and necessitating severance. However,

> In several cases, the Fifth Circuit has found that statements unknowingly made to an undercover officer or agent are not testimonial in nature. *See, e.g., U.S. v.. Vasquez*, 234 Fed.Appx. 310, 313-14 (5th Cir. 2007). As to the statements which are contested, the defendants do not argue that the persons making the statements were aware at that time that they were speaking to, or in the presence of, a government agent or informant. By their very nature, statements to an undercover agent or informant are not made under circumstances which would lead an objective witness to reasonably believe that the statements would be available for later use at trial. Although the Supreme Court in *Crawford* declined to formulate a

8

> precise definition of "testimonial," when compared to the examples provided by the *Crawford* opinion itself, and in later cases, the Court cannot find that the statements made by the individuals speaking to or in the presence of a government agent or informant in this case are testimonial in nature. Accordingly, *Crawford* does not bar the admission of such statements at trial.

*United States v. Brown*, Crim. Action No. 10-100-BAJ-SCR, 2011 WL 576901, at *5 (M.D. La., Feb. 9, 2011); *see also Michigan v. Bryant*, No. 09-0150, 2011 WL 676964, at *9 n.3, *15 (U.S. Feb. 28, 2011) ("As we suggested in *Davis*, when a court must determine whether the Confrontation Clause bars the admission of a statement at trial, it should determine the 'primary purpose of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs"; in both the *Davis* and *Michigan* cases, the Supreme Court explicitly reserved the question of whether and when statements made to someone other than law enforcement personnel are testimonial.).

In other words, statements made by Stevens and Gilmore in their separate conversations with the CW were not testimonial and thus do not violate the other Defendant's confrontation rights under *Crawford*.

Additionally, the statements **by Stevens and by Gilmore** were not confessions facially inculpating the other Defendant (without reference to other evidence).[3] Therefore, the admission of the statements do not violate *Bruton*.

Based on the record before it, the Court finds that a joint trial will not violate Defendants' Sixth Amendment rights. Defendants have shown neither specific and compelling prejudice

---

[3]The Court is not concerned under *Bruton* with the statements of the CW, but only the statements of each Co-Defendant as to the other Co-Defendant.

9

against which the Court is unable to provide protection, nor that such prejudice would result in an unfair trial. Therefore, Defendants' Motion to Sever is DENIED.

Finally, given the Court's conclusions in this Ruling, it need not reach the Government and Gilmore's dispute as to whether Defendants' statements in their separate conversations with the CW are admissible statements of co-conspirators. FED. R. EVID. 801(d)(2)(E) ("[A] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."). To the extent that Defendants contend that the statements of either Gilmore, Stevens, or the CW should be excluded at trial under the Federal Rules of Evidence, they should file a motion in limine prior to trial. Similarly, the Court will consider any redaction and/or limiting instructions to address Defendants' concerns of prejudice. If Defendants seek redaction and/or limiting instructions, they should submit their proposals with their other pre-trial submissions.

**B.     Motion to Dismiss**

Defendants next move to dismiss Count 1 of the Indictment. Count 1 charges that beginning in 2006 and continuing until on or about December 17, 2009, Defendants improperly used the enterprise of the City of Monroe "to enrich themselves by extracting bribes in the forms of cash and other things of present or prospective value from individuals and organizations with business before the [City of Monroe]." [Doc. 1, p. 3]. Specifically, they are accused of committing public bribery in violation of La. Rev. Stat. 14:118 by promising to take "actions favorable" to the individuals and businesses from whom bribes were extracted.

In the Fifth Circuit, "'[t]he propriety of granting a motion to dismiss an indictment under

10

[FED. R. CRIM. P.] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.'" *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977) (quoting *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974)); *see also United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005). "[A] question of law presented in a case involving undisputed facts can be determined without a trial of the general issue," and a district court is, thus, authorized to rule on such a motion to dismiss under Rule 12. *Flores*, 404 F.3d at 325. A "district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (other citations and internal quotation marks omitted), *quoted with approval in Flores*, 404 F.3d at 324 n.6.

In this case, Defendants make two arguments. First, Defendants argue that, even if the predicate acts alleged by the Government are proven, as a matter of law, the acts do not constitute a pattern of racketeering under RICO.[4] Second, they contend that the pattern requirement in the RICO statute, as applied to them, is unconstitutionally vague. Thus, Defendants' arguments are properly addressed in a pre-trial motion.

### 1. Pattern of Racketeering

First, Defendants argue that the predicate acts alleged by the Government are insufficient

---

[4]The Government contends that Defendants' arguments, though couched in terms of legal sufficiency, are actually attacks on the sufficiency of the Government's evidence and thus they cannot obtain a pre-trial ruling under Fed. R. Crim. P. 12(b). The Court disagrees and reaches the substantive arguments raised by Defendants.

11

to meet the continuity requirement necessary to establish a pattern of racketeering.

The RICO statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Liability under this section may be based on "either of 'a pattern of racketeering activity,' or of 'collection of unlawful debt.'" *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989); *see also United States v. Posada-Rios*, 158 F.3d 832, 855 (5th Cir. 1998) (If the Government proceeds on a pattern of racketeering activity, then it must prove "(1) the existence of an enterprise that affects interstate or foreign commerce, (2) that the defendant was 'employed by' or 'associated with' the enterprise, (3) that the defendant participated in the conduct of the enterprise's affairs, and (4) that the participation was through 'a pattern of racketeering activity.'") (citing *United States v. Erwin*, 793 F.2d 656, 670 (5th Cir. 1986)). "Racketeering activity" is defined under RICO as "any act or threat involving," among others, state-law crimes such as bribery. 18 U.S.C. § 1961(1). At a minimum, to show a pattern, the statute requires two racketeering predicates committed within a 10-year period. 18 U.S.C. § 1651(5). While the RICO statute establishes the minimum number of predicates, the Supreme Court has held that the Government must prove more. *See H.J., Inc.*, 492 U.S. at 238-39. The "racketeering predicates" must be "related" and "amount to or pose a threat of continued criminal activity." *Id.* at 239.

With regard to continuity, the Supreme Court has explained further:

> "Continuity" is both a closed- and open-ended concept, referring either to a

12

> closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (3d Cir. 1987). It is, in either case, centrally a temporal concept-and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months **and** threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*Id.* at 241 (boldface type added) (citing S. Rep. No. 91-617, at 158). The continuity requirement is "satisfied where it is shown that the predicates are a regular way . . . of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* at 243.

Citing cases involving a closed period of repeated conduct from a number of courts, Defendants argue that the predicate acts alleged did not occur over a substantial period of time and, thus, do not establish the continuity necessary for a pattern of racketeering activity. They point out that the Indictment alleges that Stevens committed five predicate acts over a 22-month period and that Gilmore committed four predicate acts over an 18-month period. Defendants contend that these few acts allegedly committed over a less-than-two-year period are insufficient as a matter of law to sustain a RICO conviction.

The Government responds that this case involves open-ended continuity and that Defendants' predicate acts constitute a pattern because they establish a threat of continued racketeering activity. Specifically, the Government contends that Defendants would have continued taking bribes from the CW had the scheme not been terminated by the FBI on

13

December 17, 2009, with a search of Stevens and interviews or attempted interviews of Stevens and Gilmore. Additionally, while there are a total of nine charged acts of racketeering, occurring between February 2008 and December 2009, the Government contends that the CW will testify that he paid bribes to Defendants as early as 2006.

In *United States v. Walker*, 348 Fed. App'x 910, 2009 WL 3150357 (5th Cir. 2009), two state court judges, Michael Walker and Vernon Claville, were charged with a RICO violation that included ten acts over a two-and-a-half month period beginning May 3, 2007, and ending July 21, 2007. Walker and Claville argued that the predicate acts over this period of time were insufficient "to establish the continuity facet of a pattern of racketeering as required by RICO." *Id.* at 911. The Fifth Circuit disagreed, holding:

> Despite short durations, courts have held that the continuity facet is met when there is no doubt that a jury could reasonably infer from the frequency and escalating seriousness of the defendants' crimes that their past conduct . . . by its nature projects into the future with a threat of repetition. Here, the evidence shows there is no doubt that a jury could reasonably infer from the proven acts that Walker's and Claville's actions would "project into the future with a threat of repetition." As such, the Government met the continuity facet of a pattern of racketeering.

*Id.* at 911-12 (citing *United States v. Richardson*, 167 F.3d 621, 626 (D.C. Cir. 1999) (quoting *H.J., Inc.*, 492 U.S. at 241)).

While *Walker* is not binding authority on this Court, it is persuasive and consistent with the Supreme Court's analysis in *H.J., Inc.* Based on the record before it, the Court finds that the Government has sufficiently alleged a pattern of racketeering activity to survive Defendants' pre-trial motion. If Defendants wish to challenge the sufficiency of that evidence, they may do so in a proper motion for judgment of acquittal at the close of the Government's case. Defendants'

Motion to Dismiss on this basis is DENIED.

### 2. Vagueness Challenge

Defendants also challenge the RICO statute on grounds that the pattern requirement is vague and thus violates the Due Process Clause. In support, they cite Justice Antonin Scalia's concurrence in *H.J., Inc.*, criticizing the Supreme Court for providing nothing more than "hints as to what RICO means, though with the caveat that Congress intended that they be applied using a 'flexible approach.'" 492 U.S. at 251 (Scalia, J. concurring). Defendants argue that no one of ordinary intelligence could understand the pattern requirement of RICO if Justice Scalia is "unable to provide an interpretation of RICO that gives significantly more guidance concerning its application." *Id.* at 254-55. Finally, Defendants ask the Court to accept Justice Scalia's "invitation" in *H.J., Inc.* to find that the pattern requirement of RICO is unconstitutionally vague. *See id.* at 256 (Justice Scalia cautioned that the Supreme Court's inability "to derive from this statute anything more than . . . [the] meager guidance [in *H.J.., Inc.*] bodes ill for the day when [a constitutional] . . . challenge is presented.").

The Government opposes Defendants' challenge and points out that numerous defendants have attacked the RICO statute citing Justice Scalia's concurrence, but the courts, including the Fifth Circuit Court of Appeals, have rejected those challenges.

A statute is unconstitutionally vague when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).

In *Abell v. Potomac Ins. Co. of Ill.*, 946 F.2d 1160 (5th Cir. 1991), the appellant

15

challenged the RICO statute, and particularly the pattern requirement, as unconstitutionally vague in violation of the procedural due process guarantees of the Fifth Amendment. The appellant, like Defendants herein, relied on Justice Scalia's concurrence in *H.J., Inc.*, arguing that "if the justices of the Supreme Court, the circuit judges sitting on the various Courts of Appeals and the district court judges are unable to discern the meaning of 'pattern of racketeering activity' from 18 U.S.C. §§ 1961, *et seq.*, then men of common intelligence must necessarily guess at its meaning and differ as to its application." 946 F.2d at 1166-67 (internal quotation marks omitted).

The Fifth Circuit analyzed the appellant's challenge, explaining the burden placed on him:

> In bringing his constitutional contention to us, Fryar is apparently overlooking the principle that "outside the First Amendment context, a party has standing to raise a vagueness challenge only insofar as the statute is vague as applied to his or her specific conduct." *United States v. Pungitore*, 910 F.2d 1084, 1104 (3d Cir. 1990), *cert. denied*, -- U.S. --, 111 S. Ct. 2010, 114 L.Ed.2d 98 (1991); *see also United States v. Angiulo*, 897 F.2d 1169, 1179 (1st Cir. 1990) (in absence of First Amendment considerations, vagueness challenge must be examined in light of a case's particular facts), *cert. denied*, 498 U.S. 845, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). For his vagueness challenge to succeed, Fryar would have had to show this Court that the scope of RICO's "pattern" element was so unclear that a person of ordinary intelligence in Fryar's position would not have had adequate notice that his actions constituted a "pattern of racketeering activity." *See id.* at 1179.

946 F.2d at 1167; *see also Walker*, 348 Fed. App'x. at 912 (Relying on *Abell* and rejecting appellants' claim that "RICO's pattern requirement is unconstitutionally vague because it is uncertain what period of time is required to constitute a pattern" because appellants only had standing to challenge a statute for vagueness as applied to his or her specific conduct, and "a person of ordinary intelligence in Appellants' positions would have had adequate notice of the

criminality of his actions.").

In this case, Defendants are public officials accused of using their positions on the Monroe City Council to extract bribes from persons with business before the City of Monroe and in violation of the State's public bribery law. On the facts before it, the Court finds that Defendants had adequate notice that their alleged conduct would violate the RICO statute's pattern requirement. Thus, the RICO statute's pattern requirement, as applied to Defendants, is not unconstitutionally vague. Accordingly, Defendants' Motion to Dismiss on this basis is also DENIED.

### C. Motion for Bill of Particulars

Finally, Defendants move the Court to require the Government to file a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). Defendants are charged with RICO and Hobbs Act violations as a result of their allegedly having received cash and "other things of present or prospective value" in return for favorable consideration before the City of Monroe for the "individuals" from whom the bribes were received.[5] Defendants contend that the Government should be required to file a bill of particulars identifying what things of present or prospective value they allegedly received or were offered and the names of the individuals from whom these bribes were allegedly received.

The Government opposes Defendants' motion, contending that a bill of particulars is not to be used to obtain detailed disclosure of evidence and that, through the discovery process,

---

[5]Defendants refer to their alleged receipt of "other considerations," but the Indictment states that Defendants extracted bribes "in the form of cash and other things of present or prospective value." [Doc. No. 1, p. 3].

17

Defendants are well aware of the Government's theory of the case.

"The purpose of a bill of particulars is to apprise a defendant of the charges against him with enough detail to allow him to prepare his defense." *United States v. Kirkham*, 129 Fed. App'x 61, 71 (5th Cir. 2005) (citing *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir. 1983)); *see also United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978). "A bill of particulars is not required if a defendant is otherwise provided . . . with sufficient information to enable him to prepare his defense and avoid surprise." *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991). "A defendant should not use the Bill of Particulars to 'obtain a detailed disclosure of the government's evidence prior to trial.'" *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) (quoting *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973)).

The Court finds that a bill of particulars is unnecessary in this case. The Indictment sufficiently apprised Defendants of the charges against them. To the extent that they might otherwise have been surprised by the identity of the CW and his claims against them, the Government has provided discovery, including recordings which detail the consideration paid and/or offered and from which Defendants should have been able to identify the CW.[6] Therefore, Defendants' Motion for a Bill of Particulars is DENIED.

---

[6] In their Reply, Defendants contend that the Government "may call witnesses who it contends were alleged participants in the charged scheme," but who were "not referenced in the indictment." [Doc. No. 52, p. 2]. The Court has found that a bill of particulars is not warranted in this case. However, the Court does not expect Defendants to be ambushed at trial. Should Defendants truly be "surprised" by the Government's witness list when it is submitted ten (10) days prior to trial, the Court would consider a continuance or any other remedy necessary to provide Defendants a fair trial.

## CONCLUSION

For the foregoing reasons, Gilmore's Motion to Sever [Doc. No. 37], Motion to Dismiss [Doc. No. 39], and Motion for Bill of Particulars [Doc. No. 40], all of which were joined by Stevens, are DENIED.

Monroe, Louisiana, this 3 day of March, 2011.

*/s/ Robert G. James*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE