RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE ___9, 14, 11___

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Cr.  No.  10-0200-01/02** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **ROBERT E. STEVENS AND**<br>**ARTHUR GILMORE, JR.** | **MAG. JUDGE KAREN L.  HAYES** |

### RULING

Pending before the Court are oral motions for judgment of acquittal filed by Defendant

Arthur Gilmore, Jr. ("Gilmore") [Doc. No. 101] and Defendant Robert E. "Red" Stevens

("Stevens") [Doc. No. 102]; Stevens' "Motion to Dismiss or, Alternatively, for an Order

Granting a New Trial" ("Motion to Dismiss or for New Trial") [Doc. No. 123], joined by

Gilmore [Doc. No. 129]; Gilmore's Motion for Judgment of Acquittal or, in the Alternative, for

New Trial ("Motion for Judgment or New Trial") [Doc. No. 126], joined by Stevens [Doc. No.

130]; and Gilmore's Supplemental Motion for New Trial [Doc. No. 160].  The motions have

been fully briefed and are ready for ruling.

For the following reasons, Defendants' oral motions for judgment of acquittal [Doc. Nos.

101 & 102] and Gilmore's Motion for Judgment or New Trial [Doc. No. 126], joined by Stevens

[Doc. No. 130], are DENIED.  Stevens' Motion to Dismiss or for New Trial [Doc. No. 123],

joined by Gilmore [Doc. No. 129], is GRANTED IN PART and DENIED IN PART.  Gilmore's

Supplemental Motion for New Trial [Doc. No. 160] is GRANTED.

## I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

This is a public bribery case brought by the Government against Stevens and Gilmore,

former Monroe City Councilmen.  The Government alleged that Stevens' and Gilmore's actions

violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c),

and the Hobbs Act, 18 U.S.C. § 1951.  At trial, Eddie Hakim ("Hakim"), a local businessman,

was the Government's primary witness.  Hakim testified that Stevens and Gilmore had accepted

or offered to accept bribes from him.  The Government presented video and audio recordings of

Hakim's meetings and conversations with each Defendant.[1]

This case arose after a lengthy FBI investigation.  On February 6, 2008, FBI Special

Agent Bill Chesser ("Chesser") first had contact with Hakim. [Doc. No. 142, Exh. D.].  By the

end of February, Hakim, with the assistance of the FBI and Louisiana State Police, was working

as a cooperating witness and recording his meetings and conversations with each of the

Defendants. *Id.*

Twenty months later, on or about October 29, 2009, Hakim's former employee, Blake

Deshotels ("Deshotels"),[2] and Deshotels' attorney contacted FBI Agent Palmer Allen ("Allen")

with allegations that Hakim was hiding assets from the Government and committing criminal tax

violations. [Doc. No. 142, Exh. A].  Allen discussed Deshotels' claims against Hakim with

Chesser, FBI Acting Supervisory Special Agent Jared Medaries, and Assistant United States

Attorney Mignonne Griffing ("AUSA Griffing"). *Id.* After this discussion, Allen provided

---

[1]The conversations and meetings were always between Hakim and one of the Defendants.
There are no conversations or meetings among Hakim, Gilmore, and Stevens.

[2]Deshotels had left his employment with Hakim in March, 2008.

Deshotels' attorney with the telephone number for the IRS Criminal Investigative Division Supervisory Special Agent Andrew Thornton. *Id.*

The IRS opened an investigation into Deshotels' specific allegations that (1) Hakim and his family employed multiple, improper property transfers to avoid capital gains tax on the 2005 sale of property in Houston, Texas; (2) that Hakim and his family have donated small interests in one of their companies to their children using a fraudulent basis in the property to avoid payment of a gift tax; and (3) that Hakim, his attorney, and his accountant set up shell companies and used other means to help Deshotels and another employee avoid their child support obligations.

On November 24, 2009, IRS Special Agent Darrin Heusel ("Heusel") initiated a "primary investigation" of Hakim, a criminal investigation in which the agent does not contact the taxpayer. [Doc. No. 142, Exh. B]. At some point early in the investigation, AUSA Griffing spoke with Heusel and told him that Hakim was a cooperating witness in an ongoing FBI investigation, that Heusel should investigate the case as he would any other, but if he uncovered wrongdoing, he should notify her because she would have a legal obligation to disclose that information to defense counsel. *Id.*

During the investigation, Heusel interviewed Deshotels. Deshotels provided Heusel with emails and correspondence from the computer he used while working for Hakim, a drawing of Hakim's building and the specific location of files and documents, copies of documents outlining property transactions, and a handwritten list of the conveyance records in Ouachita Parish related to these transactions.

While the IRS primary investigation of Hakim was ongoing, Hakim continued to record his meetings and conversations with Stevens and Gilmore through December 17, 2009.

3

On May 13, 2010, Heusel closed his investigation. *Id.* He advised AUSA Griffing that the case had been closed, but, based on privacy laws, did not disclose any details of his investigation. Neither Heusel, AUSA Griffing, nor the FBI agents involved in this case informed Hakim that he was under investigation.

When the primary criminal investigation of Hakim was closed, the file would normally have been sent to the civil unit of the IRS for a determination whether to conduct a civil audit. Unbeknownst to AUSA Griffing or the FBI, at the instruction of his supervisor, Heusel held the case in abeyance because of Hakim's status as a cooperating witness. A civil audit can produce information which results in another criminal investigation, but, as of August 15, 2011, no civil investigation had been conducted.

A grand jury indicted Stevens and Gilmore on June 23, 2010, a little over one month after the IRS investigation of Hakim was closed. Count 1 of the Indictment alleged that Defendants committed RICO violations. Section F of Count 1 identifies nine predicate acts of racketeering activity, upon which the RICO charges were based:

    (1)    Beginning on or about February 21, 2008, and continuing through February 28, 2008, Stevens committed public bribery by accepting and offering to accept $1,000.00 from the CW for assisting the CW in specific matters pending before the Board of Adjustments;

    (2)    Beginning on or about February 14, 2008, and continuing through March 27, 2008, Gilmore committed public bribery by accepting and offering to accept $1,000.00 and other valuable consideration from the CW for assisting the CW in specific matters coming before the City of Monroe;

4

(3)     Beginning on or about April 2, 2008, and continuing through March 2, 2009, Gilmore committed public bribery by accepting and offering to accept a reduced purchase price for land from the CW for assisting the CW in specific matters coming before the City of Monroe;

(4)     Beginning on or about June 10, 2008, and continuing through June 19, 2008, Stevens committed public bribery by accepting and offering to accept $500 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(5)     On or about July 1, 2008, Gilmore committed public bribery by accepting and offering to accept $230.00 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(6)     Beginning on or about December 6, 2008, and continuing through December 18, 2008, Stevens committed public bribery by accepting and offering to accept $800 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(7)     Beginning on or about March 25, 2009, and continuing through April 7, 2009, Stevens committed public bribery by accepting and offering to accept $3,000.00 from the CW for assisting the CW in specific matters coming before the City of Monroe;

(8)     Beginning on or about August 25, 2009, and continuing through August 28, 2009, Gilmore committed public bribery by accepting and offering to accept $207.00 from the CW for assisting the CW in specific matters

5

coming before the City of Monroe; and

(9)     Beginning on or about December 11, 2009, and continuing through

December 17, 2009, Stevens committed public bribery by accepting and

offering to accept $1,000.00 for assisting the CW in specific matters

coming before the City of Monroe.

[Doc. No. 1]. In Count 2 of the Indictment, the paragraphs in support of the RICO charges were

incorporated. Based on those paragraphs, Defendants were alleged to have violated the Hobbs

Act by obtaining property not due to them under color of official right.

After reading about Defendants' Indictment in *The NewsStar*, the Monroe newspaper,

Deshotels contacted Heusel, who informed Deshotels that the criminal investigation had been

closed. At some point, Deshotels left a message for AUSA Griffing. AUSA Griffing returned

Deshotels' call, but after realizing who he was, she ended the call because she has a standard

practice of not speaking with any potential witness and, in general, with any layperson about a

case.

On November 12, 2010, among other filings, Gilmore filed a Motion to Sever Trial of

Defendant from Co-Defendant's Trial Because of Prejudicial Joinder ("Motion to Sever") [Doc.

No. 37]; a Motion to Dismiss Count 1 of the Indictment [Doc. No. 39]; and a Motion for Bill of

Particulars [Doc. No. 40]. On the same day, Stevens filed a Motion to Adopt Motions of Co-

Defendant [Doc. No. 36], which was granted by the Court [Doc. No. 43]. Thus, Stevens joined

in all of Gilmore's motions. *See* [Doc. Nos. 44, 45 & 46].

On December 9, 2010, the Government filed an In Globo Response to Defense Motions

[Doc. No. 48], responding to the Motion to Sever, Motion to Dismiss Count 1 of the Indictment,

6

and Motion for Bill of Particulars.

On January 7, 2011, Gilmore filed a Reply to Government's In Globo Response to Defense Motions [Doc. No. 52].

On March 3, 2011, the Court issued a Ruling [Doc. No. 54] denying Defendants' Motion to Sever, Motion to Dismiss Count 1 of the Indictment, and Motion for Bill of Particulars. With regard to the Motion to Sever, Defendants argued that a severance was necessary under Federal Rule of Criminal Procedure 14 because the evidence was "so clearly inter-related that it will be extremely difficult for the trier of fact to compartmentalize the evidence with respect to each defendant." [Doc. No. 37, p. 2]. Defendants also argued that the introduction of recordings of a potentially non-testifying co-defendant about activities similar to those of the other defendant would create "a severe *Bruton* problem." [Doc. No. 37, p. 2]; *see Bruton v. United States*, 391 U.S. 123 (1968). Each Defendant argued that, if the recordings of both Defendants were used at trial, he would not be able to cross-examine his Co-Defendant if that Co-Defendant elected not to testify.

The Court ruled that the jury could separate and consider the Government's case against each Defendant. The Court also reviewed the text of the recordings and found that statements made by Stevens and Gilmore in their separate conversations with Hakim[3] were non-testimonial and thus did not violate the other Defendant's Sixth Amendment rights under the Confrontation Clause, as interpreted in *Crawford v. Washington*, 541 U.S. 36 (2004). [Doc. No. 54]. The

---

[3]In its rulings on the pre-trial motions, the Court referred to Hakim as "the CW," but it was clear before trial that the only confidential or cooperating witness in this case was Hakim. The Court thus refers to Hakim by name in this ruling.

Court also found that Stevens' and Gilmore's statements were not confessions which facially inculpated the other Defendant and thus did not violate *Bruton*. *Id.* Statements by Hakim, the confidential witness, did not violate *Bruton*. *Id.* The Court declined to reach the parties' dispute as to whether Stevens' and Gilmore's statements in their separate conversations with Hakim were admissible as the statements of co-conspirators. To the extent that Defendants argued that the statements of Gilmore, Stevens, or Hakim should be excluded at trial under the Federal Rules of Evidence, the Court invited them to file a motion in limine prior to trial. The Court also stated that it would consider redacting the statements and/or giving appropriate limiting instructions to the jury.

The Court also rejected Defendants' arguments in support of the Motion to Dismiss Count 1 of the Indictment. Count 1 charged that beginning in 2006 and continuing until on or about December 17, 2009, Defendants each violated RICO by improperly using the enterprise of the City of Monroe "to enrich themselves by extracting bribes in the forms of cash and other things of present or prospective value from individuals and organizations with business before [the City of Monroe.]" [Doc. 1, p. 3]. They were accused of committing public bribery in violation of La. Rev. Stat. 14:118 by promising to take "actions favorable" to the individuals and businesses from which bribes were extracted, as detailed in the nine predicate acts. [Doc. No. 1, Section F]. Defendants argued that Count 1 should be dismissed because the predicate acts alleged by the Government are insufficient to meet the continuity requirement necessary to establish a pattern of racketeering and because the pattern requirement in the RICO statute is so vague on its face as to violate the Due Process Clause on its face. Relying on the persuasive

8

authority of *United States v. Walker*, 348 Fed. App'x 910, 2009 WL 3150357 (5th Cir. 2009), the

Court found that the Government sufficiently alleged a pattern of racketeering activity to survive

Defendants' pre-trial motion.  The Court further ruled that it must consider the RICO statute's

pattern requirement as applied to Defendants' alleged actions and that, as applied, the pattern

requirement did not violate Defendants' due process rights.

Finally, with regard to the Motion for Bill of Particulars, the Court found that the

Indictment sufficiently apprised Defendants of the charges against them.  By the time of the

Court's Ruling, the Government had provided discovery, including recordings of Defendants'

conversations and meetings with Hakim.  Therefore, each Defendant could identify Hakim and

determine the consideration allegedly paid and/or offered.

A pre-trial conference was conducted on March 24, 2011.  During the conference,

Magistrate Judge Hayes raised the Court's concern about the admissibility of the recorded

statements between Hakim and each Defendant.  In response, on April 14, 2011, the Government

filed a pretrial memorandum detailing its position on the admissibility of the recordings.

On April 15, 2011, all parties filed their pre-trial submissions.  Among other motions,

Gilmore filed a Motion for Reconsideration of his Motion to Sever [Doc. No. 63] and a Motion

in Limine to Exclude Prejudicial Portions of Taped Conversations that the Government Intends

to Use at Trial, or, Alternatively, Supplemental Pleading in Support of Mr. Gilmore's Motion for

Reconsideration of the Court's Denial of his Rule 14 Motion for Severance [Doc. No. 64].

On the same day, Stevens filed a pretrial memorandum detailing his position on the

admissibility of the recordings and transcripts. [Doc. No. 65].  He also filed a Motion to Adopt

9

Gilmore's Motions [Doc. No. 67].

On April 16, 2011, the Government filed another pretrial memorandum regarding the admissibility of the recordings and transcripts.

On April 20, 2011, Gilmore filed a Notice of Intent to Use Prior Conviction of Hakim's Company, Luv N' Care, that is More than Ten Years Old, pursuant to Federal Rule of Evidence 609(b). [Doc. No. 72]. After considering the response of the Government, the Court ruled that Defendants could not introduce evidence of Luv N' Care's seventeen-year-old conviction because it was irrelevant and did not show bias.

On April 21, 2011, the Government file a response [Doc. No. 76] to Gilmore's Motion for Reconsideration and Motion in Limine.

On April 25, 2011, the Court granted Stevens' Motion to Adopt Gilmore's latest motions [Doc. Nos. 81 & 82].

Stevens and Gilmore were tried by a jury between April 27 and May 10, 2011. On the first day of trial, the Court issued a Ruling [Doc. No. 84] denying Gilmore's Motion for Reconsideration of his Motion to Sever and denying his Motion in Limine. The Court also denied Stevens' objections to the presentation of transcripts to the jury and his request that the Government play the recordings in their entirety. In its Ruling, the Court specifically addressed each of Defendants' objections.

On April 29, 2011, the third day of trial, Gilmore re-urged his Motion to Sever under Rule 14, and Stevens re-urged his arguments that the Court exclude the transcripts and that the Government should be required to play the recordings in their entirety. The Court denied both

10

motions.[4]  Defendants each orally moved, again, to adopt the motions of the other.  The Court

granted their motions and ruled that each Defendant would be deemed to adopt the motion of the

other unless he opted out.

On May 3, 2011, the fifth day of trial, in anticipation of Defendants' presentation of

evidence, the Government filed a memorandum on the admissibility of evidence relating to

Hakim's credibility under Federal Rule of Evidence 608(b).  Specifically, the Government was

concerned that Defendants might attempt to improperly introduce extrinsic evidence of specific

instances of Hakim's conduct as a means of attacking his character for truthfulness, rather than

inquiring of Hakim on cross-examination.  Defendants had listed City of Monroe Mayor Jamie

Mayo ("Mayo") as a witness, and the Government speculated that Defendants might solicit

testimony from Mayo that Hakim attempted to bribe him or engaged in some other specific bad

act.

The following day, May 4, 2011, the Government rested its case.  At that time, Gilmore

and Stevens orally moved for judgment of acquittal pursuant to Federal Rule of Criminal

Procedure 29 [Doc. Nos. 101 & 102] and again re-urged their motions to sever [Doc. Nos. 103 &

104].  The Court denied the motions to sever, but took the motions for judgment of acquittal

under advisement.

The same day, on May 4, 2011, Stevens filed a response to the Government's Rule 608(b)

memorandum.  Stevens argued that the Government's interpretation of Rule 608(b) was too

---

[4]Defendants were permitted to play the entire recordings during their presentation of
evidence.

narrow and did not allow for recognized exceptions.  Stevens contended that Mayo would testify as to Hakim's general reputation for truth and veracity and, thus, his testimony was admissible. While he did not file a memorandum, Gilmore orally argued that Mayo could offer additional testimony to establish Hakim's bias.

After consideration of the parties' arguments, the Court ruled that Mayo would be allowed to testify as to his opinion of Hakim's capacity for truthfulness and as to Hakim's reputation in the community for truthfulness.  The Court excluded any evidence of Hakim's bias against Mayo because it was irrelevant since Stevens and Gilmore, not Mayo, were on trial.  The Court also excluded Stevens' proffered Exhibit 652, a local newspaper advertisement that Hakim purchased to attack Mayo.  Defendants objected to the Court's ruling.

Defendants presented their case, offering their own testimony and the testimony of Mayo, City Councilman Jay Marx ("Marx"), and Lyle Miller ("Miller"), a member of the I-20 Economic Development Board,  that Hakim was not credible or worthy of belief.  The Government responded with rebuttal testimony.

On May 9, 2011, the last day of testimony, Deshotels contacted the office of Carey Underwood ("Underwood"), counsel for Stevens, to inquire whether Underwood was aware of Deshotels' allegations and the IRS primary investigation of Hakim that was closed shortly before Stevens' and Gilmore's Indictment.

On May 10, 2011, the final day of trial, counsel gave closing arguments, the Court instructed the jury, and the case was then submitted for the jury's consideration.  After deliberation, the jury found Stevens and Gilmore guilty on Counts One and Two.  Their oral

12

motions for judgment of acquittal [Doc. Nos. 101 & 102] remained under advisement.

After trial, Underwood investigated Deshotels' claims. He learned that Deshotels had been the commercial and residential real estate manager for some of Hakim's companies. Underwood obtained an affidavit from Deshotels and certified copies of the conveyance records of Ouachita Parish which appear to support some of Deshotels' claims. Relying on these documents, Stevens filed the pending Motion to Dismiss or for New Trial [Doc. No. 123] on June 13, 2011, pursuant to an extension of time. He also filed a Motion to Adopt Motion of Other Defendant [Doc. No. 124].

On June 15, 2011, Gilmore filed a Motion to Adopt Stevens' Motion to Dismiss or for New Trial [Doc. No. 125] and the pending Motion for Judgment or New Trial [Doc. No. 126]. Gilmore also filed a Supplemental Brief [Doc. No. 141] in support of his Motion for Judgment or New Trial.

On June 16, 2011, the Court granted each Defendant's motion to adopt [Doc. Nos. 127 & 128]. Thus, Gilmore has adopted Stevens' Motion to Dismiss or for New Trial [Doc. No. 129], and Stevens has adopted Gilmore's Motion for Judgment or New Trial [Doc. No. 130].

On June 28, 2011, pursuant to an extension of time, the Government timely filed an "In Globo Response to Defendant's Motion for Post-Verdict Judgment of Acquittal or, In the Alternative, for a New Trial, and Defendant's Supplemental Brief in Support of Motion for Post-Verdict Judgment of Acquittal or, in the Alternative, for a New Trial" ("Response to Motion for Judgment or New Trial") [Doc. No. 136].

On July 9, 2011, the Government filed a "Response to Defendants' Motion to Dismiss or,

13

Alternatively, for an Order Granting a New Trial" ("Response to Motion to Dismiss or for New Trial") [Doc. No. 142].

On August 1, 2011, Stevens filed a Reply to Government's Response to Defendant's Motion to Dismiss, or, Alternatively, for an Order Granting a New Trial ("Reply in Support of Motion to Dismiss or for New Trial") [Doc. No. 145].[5]

On August 3, 2011, the Court issued a minute entry [Doc. No. 149], in which it stated that it would decide the Motion for Judgment or New Trial on the record, but set a hearing on the Motion to Dismiss or for New Trial for August 15, 2011.  The Court ordered the Government to provide, by August 8, 2011, all evidence related to the IRS primary investigation of Hakim (unless previously provided) for an in camera inspection.

As ordered, the Government provided a voluminous number of emails Deshotels had provided to the IRS, which the Court reviewed prior to the hearing.

Stevens also submitted an expert report from David Gunn ("Gunn"), a board-certified tax attorney and C.P.A. with 37 years of experience.  Gunn reviewed the affidavits of Deshotels, Chesser, Heusel, and Hakim; Hakim's Consent to Disclose Tax Information; and a January 14, 2008 email from accountant Steve Pickering to Hakim's attorney, Joe D. Guerriero.  He also discussed the case with Defendants' counsel.  Gunn expressed the opinion that, given Deshotels' allegations and the details and documentation provided, the IRS would have been expected to fully explore those allegations and to interview Hakim.  He further expressed the opinion that the

---

[5]The Court denied the Government's Motion to Strike the reply memorandum as untimely, finding no prejudice to the Government.  [Doc. Nos. 146, 147 & 152].

2005 sale of Houston, Texas real estate by Corridor 1 or 2 Properties, LLC, for $13 million

against an adjusted income tax basis of $200,000.00 should have resulted in a taxable gain of

$12.8 million.  According to Gunn, under Section 1031 of the Internal Revenue Code, a

transferor can defer capital gains tax if within 45 days it acquires a like-kind business or

investment property, i.e., a replacement property.  However, in this case, it appears that the

Hakim family transferred certain properties in Ouachita Parish, including the Sherrouse

Plantation development property, to an employee, David Moses ("Moses").  Moses then

transferred to properties to Eddie, Joseph, and Jack Hakim and Penny Realty, Inc., another

Hakim company.[6]  If, as Deshotels averred and based on documentation provided, Hakim

engaged in these type of fraudulent Section 1031 transfers, Gunn opined that Hakim would have

owed federal income tax of approximately $2 million to $3 million.

   On August 15, 2011, the Court conducted a hearing on the Motion to Dismiss or for

New Trial.  After lengthy discussions in chambers regarding the evidence to be presented at the

hearing, Stevens submitted his Motion to Dismiss or for New Trial on the record.  He specifically

relied on the affidavit of Deshotels and attached exhibits, the affidavits of Chesser, Allen, and

Heusel, the representations AUSA Griffing in her Response to the Motion to Dismiss or for New

Trial,[7] and the Pickering email.  He moved for and was granted leave of Court to have Gunn

---

[6]Penny Realty, Inc., and the Hakim brothers then apparently sold the property to other family limited liability companies.

[7]Stevens referred to AUSA Griffing's "affidavit," but as the Government noted, AUSA Griffing made representations in her brief as an officer of the Court; she did not file an affidavit. *See* [Doc. No. 142].

convert his expert report from letter to affidavit form.  Stevens proffered that, if AUSA Griffing and  Heusel were called to testify, they would not have been able to give the exact date of the telephone call from AUSA Griffing to Heusel.  Gilmore joined in these proffers.

In response, the Government, through AUSA Bill Flanagan, added that the record before the Court included an electronic communication from Allen and the Hakim affidavit.  The Government agreed that Stevens' counsel correctly stated AUSA Griffing's and Heusel's testimony about the unknown date of the telephone call.

The parties also stipulated that, if Heusel were called to testify, he would testify that his supervisor informed him that they were not going to transfer Hakim's case to the IRS civil section for a possible audit because Hakim was a cooperating witness in an FBI case.

Finally, Gilmore objected to the Court's ruling that Defendants could not call Deshotels and Gunn as witnesses at the hearing.  Although the Court would allow Defendants to call Heusel as a witness, Gilmore objected to the Court's ruling that counsel would be limited to the questions already addressed by his affidavit, the proffers, and the stipulations.  Stevens joined in Gilmore's objections.

The Court granted Defendants ten (10) days to submit supplemental memorandum in support of the Motion to Dismiss or for New Trial.  The Government was granted ten (10) days from the date of Defendants' filing to submit a response.

On August 18, 2011, Gunn's affidavit was filed in the record. [Doc. No. 159].

On August 25, 2011, Gilmore filed a Supplemental Motion for New Trial with supporting memorandum. [Doc. No. 160].  The same day, Stevens filed a Supplemental Memorandum in

16

Support of his Motion to Dismiss or for New Trial [Doc. No. 162].

On September 1, 2011, the Government filed its response in opposition to Gilmore's

Supplemental Motion for New Trial and as a supplemental response to Stevens' Motion to

Dismiss or for New Trial [Doc. No. 164].

## II.    LAW AND ANALYSIS

### A.    Motions for Judgment of Acquittal

Rule 29 of the Federal Rules of Criminal Procedure provides as follows:

> The court on motion of a defendant or its own motion shall order the entry of
> judgment of acquittal of one or more offenses charged in the indictment or
> information after the evidence on either side is closed if the evidence is
> insufficient to sustain a conviction of such offense or offenses.

FED. R. CIV. P. 29.  When deciding whether to grant a Rule 29 motion for judgment of acquittal,

the Court must "consider the evidence, all reasonable inferences drawn from it and all credibility

determinations in the light most favorable to the government, and [determine] if a reasonable jury

could find the offense's essential elements beyond a reasonable doubt." *United States v. Medina*,

161 F.3d 687, 872 (5th Cir. 1998); *see also United States v. Rena*, 981 F.2d 765, 771 (5th Cir.

1993).  "The evidence need not exclude every reasonable hypothesis of innocence or be wholly

inconsistent with every conclusion except that of guilty," but the Government "must do more

than pile inference upon inference." *United States v. Maseratti*, 1 F.3d 330, 337 (5th Cir. 1993)

(citations omitted).

Three motions pertaining to judgment of acquittal are pending before the Court: Stevens'

oral motion for judgment of acquittal [Doc. No. 102], Gilmore's oral motion for judgment of

acquittal [Doc. No. 101], and Gilmore's Motion for Judgment or for New Trial [Doc. No. 126],

which has been joined by Stevens [Doc. No. 130].

In support of judgment of acquittal, Defendants rely on their previously raised oral and written arguments.  In addition, Defendants argue[8] that the evidence was insufficient to establish the following: (1)  that they had specific intent to commit bribery, an essential element of the RICO violation;  (2)  that they knowingly and willfully induced another to pay them money by threatening to take or withhold official action, an essential element of the Hobbs Act; (3) that they knowingly took advantage of their office to obtain a consensual transfer of property from Hakim, an essential element of the Hobbs Act; (4) that they made performance or non-performance of an official act contingent upon payment of a fee, which is fatal to the Hobbs Act charges; (5) that they used apparent authority of their position to secure benefits from Hakim. Additionally, Gilmore contends that there was no evidence that he ever demanded money from Hakim in return for an action or inaction on his part or that he wrongfully used otherwise valid power, so as to convert dutiful action into extortion; thus, requisite intent may not be inferred from his actions.

In a supplemental memorandum [Doc. No. 141], Gilmore also argues that he is entitled to judgment of acquittal because the evidence was insufficient to show that (1) he did not exercise good faith in his dealings with Hakim; (2) the monies he received went to others except for a $1,000 campaign contribution; (3) the Government presented no evidence to "counter [his] contention that Hakim used [the] completed [Sherrouse] transaction to twist the good intentions

---

[8]Because Stevens' joined Gilmore's Motion for Judgment or New Trial, the Government in its response and the Court in this Ruling have treated the arguments as if they were raised by both Defendants except when noted.

of the Gilmores'[sic]," [Doc. No. 141, p. 2]; (4) the Government, which bore the burden, did not

prove that Gilmore was NOT entrapped; and (5) the record evidence is insufficient to show that

two of Gilmore's four alleged overt acts were proven beyond a reasonable doubt.[9]

The Government has responded to each of Defendants' arguments. To the extent that

Defendants rely on any arguments asserted at trial, the Government also relies on its responses at

trial. With regard to Gilmore's sufficiency of the evidence arguments, the Government contends

that the evidence was clearly sufficient to convict Defendants and points to specific evidence the

jury had available. The Government further argues that it did not have to prove the following:

that Defendants threatened to take or withhold official action; that Defendants made an explicit

demand for payment, that Gilmore "demanded" payment; that Defendants wrongfully used

otherwise valid power; or that Gilmore personally received a benefit from the bribe. Finally, the

Government argues that the jury was given the instruction on specific intent that Defendants

requested and that the jury was also instructed on good faith and entrapment, as Defendants

requested.

### 1.      Arguments Previously Raised

To the extent that Defendants' motions rely on arguments previously raised at trial in

support of acquittal, and to the extent that the arguments were previously rejected by the Court,

the oral motions for judgment of acquittal and Defendants' motion for judgment of acquittal in

---

[9]Although Stevens did not file another specific motion to join the Supplemental
Memorandum, it is clear that Stevens and Gilmore have joined in all of each other's motions and
memorandums. Therefore, the Court has also considered these arguments as they may be
applicable to Stevens.

the Motion for Judgment or New Trial are DENIED.  The Court notes that it ruled on

Defendants' motions for severance and re-urged motions for severance several times and finds no

reason to re-visit severance in this Ruling.  To the extent that Defendants were concerned about a

Confrontation Clause problem prior to trial, that issue was resolved when each Defendant

testified, and the other Defendant had the opportunity to examine him.  Similarly, the Court has

already ruled previously on Defendants' Motion to Dismiss Count 1 of the Indictment and stands

by the analysis in that ruling.

The remainder of the arguments that Defendants raised orally are addressed by the

Court's rulings below.  For those reasons, Defendants' oral motions for judgment of acquittal and

the motion for acquittal contained in the Motion for Judgment or New Trial are DENIED.

### 2.      Sufficiency of the Evidence

Defendants next raise arguments regarding the sufficiency of the evidence.

### a.      Specific Intent to Commit Bribery

First, Defendants contend that the Government failed to prove their specific intent to

commit public bribery.

In Count 1, Defendants are accused of committing a RICO violation.  The Indictment set

forth nine racketeering acts, which allege that the Defendants committed public bribery in

violation of Louisiana Revised Statute 14:118.  Gilmore was accused of committing four of those

acts, and Stevens was accused of committing five.  Since bribery is the charge in the underlying

state offense, the Government was required to prove all the elements of bribery beyond a

reasonable doubt as to each Defendant.

20

The jury instructions properly defined public bribery as follows:

> Public bribery is the direct or indirect acceptance of or offer to accept anything of apparent present or prospective value by a public officer, public employee, or person in a position of public authority, knowing that it was given or offered with intent to influence the conduct of the public officer, public employee, or person in a position of public authority in relation to his position, employment, or duty.

[Doc. No. 114, pp. 12-13]; *see also* LA. REV. STAT. 14:118. The jury was also given the following instruction at Defendants' request:

> The RICO statute does not define the mens rea, or the necessary mental state, a defendant must have to violate the statute. The Government must prove beyond a reasonable doubt that each Defendant had the state of mind required by the bribery statute, which is the state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.

[Doc. No. 114, p. 14].

Viewing the evidence in the light most favorable to the jury's verdict, the Court finds that, based on the recordings and the testimony in this matter, the jury could have reasonably determined that Stevens and Gilmore accepted money and other consideration from Hakim knowing that he was offering the consideration with the intent to influence their conduct as Monroe City Councilmen. For example, in the February 22, 2008, phone call between Hakim and Stevens, the following exchange took place:

STEVENS:   Well, I'm trying to, uh, to pay my bills.

HAKIM:   Uh huh. I know how that goes.

STEVENS:   Well, yeah, but anyway, uh, uh. . .

HAKIM:   So you wanna have one lunch one day and, uh. . .

STEVENS:   Well, can we get together next . . . I'm at work now.

HAKIM:      Sure.

STEVENS:    Uh, can we, can we get together next week?

HAKIM:      Sure.  How much you need, Red?

STEVENS:    Well I don't know, that's, that's what I got to do.  I got to get a true
            assessment of it and, uh, but, but now, whoa, whoa, whoa.  I'm not asking
            you for all of it. . .

HAKIM:      I know that.  I. . .

STEVENS:    but I'm just asking for some help.

HAKIM:      I know that.

STEVENS:    **Yeah, uh, and, uh, again, as always, like I, like you've always
            known, you get it, you get it to the table, I'll try to serve it for you.**

[Exh. 3, pp. 2-3 (emphasis added)].  Similarly, at a February 28, 2008 lunch meeting, Hakim

handed Stevens an envelope containing $1,000 in cash and then said "If you need more, you

know, I'll help you.  You've helped me every time I've needed you . . .," and Stevens responded,

"And, I will." [Exh. 8, pp. 12-13].

       With regard to Gilmore, on one of the recordings, Hakim asks him why Gilmore did not

call Hakim to take care of some printing for him.  Gilmore does not say, "I can't accept that" or

indicate disagreement with Hakim's intent to give him free printing.  Instead, he responds that he

did not call about printing because he was "saving [Hakim] for something bigger." [Exh. 19, p.

2].  In other conversations between Gilmore and Hakim about the Sherrouse Plantation

development property, the jury could also have determined that Gilmore knew Hakim was

offering to sell him a lot at the price Gilmore suggested with the intent to influence his actions as

a City Councilman. *See* [Exh. 27, pp. 26-27]; [Exh. 80, pp. 5-10]; [Exh. 85, pp. 1-2].

22

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial is DENIED on this basis.

### b.      Threat to Take or Withhold Official Action

Defendants contend that the Government failed to prove that they knowingly and willfully obtained payments by threatening to take or withhold official action, an essential element of the Hobbs Act.

In Count 2, the Indictment alleges that beginning sometime in 2006 and continuing until on or about December 17, 2009, Defendants did knowingly, willfully, and unlawfully attempt to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion in that they unlawfully obtained property not due them or their office with consent, said consent being induced and obtained under color of official right, in violation of the Hobbs Act.  Under the Hobbs Act, a defendant commits a crime if he wrongfully obtained or attempted to obtain property from another, with that person's consent, under color of official right.

Contrary to Defendants' arguments, the Government did not have to prove that Defendants actually threatened to take or withhold official action.  It was enough if the Government proved that Defendants "wrongfully obtained property under color of official right," which is defined as follows:

> the taking or attempted taking by a public official of property not due to him or his office, **whether or not the public official employed force, threats, or fear**.  In other words, the wrongful use of otherwise valid official power may convert dutiful action into extortion.  If a public official accepts or demands property in return for promised performance or nonperformance of an official act, the official is guilty of extortion.  This is true even if the official was already duty bound to

23

take or withhold the action in question, or even if the official did not have the
power or authority to take or withhold the action in question, if the victim
reasonably believed that the official had that authority or power.

[Doc. No. 114, pp. 21-22]; Fifth Cir. Crim. Pattern Jury Instruction 2.74 (West 2001); *see also*

*United States v. Millet*, 123 F.3d 268, 274 (5th Cir. 1997) (To show that a defendant acted under

color of official right in a Hobbs Act extortion, the Government need only prove that the

defendant "took money or something of value not due him or his office for the performance or

non-performance of an official function.") (citing *McCormick v. United States*, 500 U.S. 257

(1991)).

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial

is DENIED on this basis.

### c.   Taking Advantage of Their Office to Obtain a Consensual Transfer of Property

Defendants next argue that the evidence was insufficient to prove that they knowingly

took advantage of their office to obtain a consensual transfer of property from Hakim, and thus

they are entitled to judgment of acquittal on their Hobbs Act convictions.

The Court finds that there was sufficient evidence presented through the testimony of

Hakim and the recordings to show that Defendants were aware that Hakim gave them money and

property because of their positions and that they did so in return for assisting him with projects

before the City.

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial

is DENIED on this basis.

### d.       Performance or Non-performance of an Official Act Contingent upon Payment of a Fee

Defendants next argue that the Government failed to prove that they made performance or non-performance of an official act for Hakim contingent upon his payment of a fee, and thus they are entitled to judgment of acquittal on their Hobbs Act convictions.

For the same reasons set forth above, the Government did not have to prove that Defendants explicitly demanded payment, and the evidence was sufficient for the jury to find that the Government met its burden on this element of the Hobbs Act violation.  While Defendants have argued orally and in writing that they believed that Hakim had good projects and that they would have taken the same actions regardless of any consideration, the jury chose to discount their testimony and to rely, as the jury was entitled to do, on Hakim's testimony, the recordings, and the other evidence offered by the Government.

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial is DENIED on this basis.

### e.       Apparent Authority

Defendants next argue that there was insufficient evidence to show that they used the apparent authority of their positions to obtain benefits.

For the same reasons and based on the evidence presented at trial, the Court finds there was sufficient evidence to link Hakim's payment of cash and other consideration to Defendants to their apparent authority as Monroe City Councilmen to assist Hakim with his projects.

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial is DENIED on this basis.

25

**f.     Demand for Payment**

Gilmore also contends that there was no evidence that he ever made a demand for payment in return for an action or inaction on his part.[10]

However, as set forth above, the Government did not have to prove that he explicitly demanded money.  The jury was entitled to infer from the evidence that Gilmore obtained payments and other consideration from Hakim in return for work on Hakim's behalf with matters before the City.

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial is DENIED on this basis.

**g.     Wrongful Use of Otherwise Valid Power**

Defendants next contend that there was no evidence that they wrongfully used otherwise valid power, so as to convert their dutiful action as City Coucilmen into extortion.  Thus, they argue, requisite intent may not be inferred from their actions.

The jury was presented with sufficient evidence to determine that Defendants obtained property not due them as public officials in return for assisting Hakim with matters before the City and that their actions as City Councilmen were, thus, wrongful. *See United States v. Partida*, 385 F.3d 546, 559 (5th Cir. 2004) (a defendant can be found guilty of this type of Hobbs Act violation if his "acceptance of the payments amounted to a wrongful use of [his] official power, i.e., that [he] knowingly accepted unauthorized payments.").

---

[10]The Court limits its consideration of this argument to Gilmore because it is clear that Stevens specifically asked Hakim for money.

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial is DENIED on this basis.

### 3. Good Faith Defense/Personal Benefit

Defendants next contend that the Government failed to rebut their showing that they acted in good faith in their receipt of money from Hakim.

The jury was instructed that good faith was a complete defense to the RICO and Hobbs Act charges against Defendants because they could not have acted in good faith, while also knowingly and unlawfully committed the offense of bribery or extortion. [Doc. No. 114, p. 22]. If the jury had found credible the testimony of Defendants and witnesses on their behalf that Defendants believed in good faith that they were acting properly, the jury could not have convicted them. [Doc. No. 114, p. 22]. Although Gilmore's case required more inference than that of Stevens, the Government offered sufficient evidence to establish beyond a reasonable doubt that the Defendants did not have an honest, good faith belief that they were acting lawfully.

Gilmore and Stevens both offered sympathetic reasons for their taking of the money. RICO and Hobbs Act violations, however, do not require a defendant to receive a personal benefit. Instead, there must be loss to the victim (Hobbs Act) or the money or thing of value was must be given with the intent to influence the defendant's conduct (RICO). *See United States v. Carlock*, 806 F.2d 535, 555 (5th Cir. 1986); LA. REV. STAT. 14:118(A)(1) and (2). As the Government points out in its brief, however, money that passed from Hakim through Gilmore and Stevens did offer them some benefits. For example, Stevens passed out turkeys to his constituents, and Gilmore helped his constituents with their rent.

27

Additionally, Gilmore claims that the Government presented no evidence to "counter [his] contention that Hakim used [the] completed [Sherrouse] transaction to twist the good intentions of the Gilmores'[sic]," [Doc. No. 141, p. 2]. However, the Government presented its evidence through Hakim, whom the jury apparently found credible, and the recordings. The evidence supported the Government's argument that Hakim indicated to Gilmore that he was willing to let Gilmore name a reduced price for a lot in the Sherrouse Plantation if Gilmore assisted him with moving that project through the City's approvement process. See [Exh. 21, pp. 21]; [Exh. 80, pp. 5-6 & 9-10]. The Government presented evidence, demonstrating that, in return, Gilmore brought in a police jury candidate to meet Hakim and discuss the project, negating Gilmore's contention that he acted in good faith. [Exh. 145, pp. 3-5].

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial is DENIED on this basis.

### 4.    Entrapment

Defendants next argue that the Government bore the burden of proving that they were not entrapped, and the Government failed to meet its burden. Thus, they are entitled to judgment of acquittal.

First, the Court notes that Defendants requested and obtained the instruction on entrapment over the Government's objection. [Doc. No. 114, p. 22]. The Court was most persuaded that the instruction was available to them because they pointed out that, in times past, Hakim had given checks directly to charitable causes for which they had requested assistance. According to Defendants, once Hakim began working with the FBI, he gave them cash to make

28

their actions appear improper. While the Court found that Defendants had presented sufficient

evidence to obtain the entrapment instruction, the jury accepted the Government's evidence that

Defendants were not entrapped.

Based on the Court's observations at trial, Gilmore talked less than Stevens and Hakim

talked the most. Nonetheless, those conversations provide reason for the jury to reject

entrapment. For example, as noted above, Gilmore paid for his own printing at Hakim's

company, Summit Printing, but he also stated that he had not asked Hakim about the printing

costs because he was saving him for "something bigger." [Exh. 19, p. 2]. The conversation

between Gilmore and Hakim indicates that Hakim had helped Gilmore in the past with expenses,

that he would again, and that he expected help with his projects in return. *See* [Exh. 20, pp.

21-22, 24-25 & 50-51]. Stevens clearly stated that he was not "asking [Hakim]" for all the

money to pay his bills, but just for "some help" and that in return he would "serve" up Hakim's

projects. [Exh. 3, pp. 2-3].

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial

is DENIED on this basis.

### 4.    Unanimous Decision on the Overt Acts

Defendants next argue that the record evidence does not show conclusively that two of

Gilmore's four alleged overt acts and two of Stevens' five alleged overt acts were proven beyond

a reasonable doubt.

The Court held charge conferences with counsel in this case. The Court was careful to

ensure that the jury knew that it had to consider the evidence against each Defendant separately

and that it must reach a unanimous decision on at least two of the four overt acts charged against

Gilmore and two of the five overt acts charged against Stevens.  The jury was instructed not

once, but twice, on the unanimity requirement.  Specifically, the jury was instructed:

> At a minimum, a pattern of racketeering activity requires at least two acts of
> racketeering activity within ten years of each other as to each Defendant;
> provided, however, that the Government proves the relationship and continuity of
> those acts as I have defined them for you.  All of you must be unanimous as to
> which racketeering acts you each believe beyond a reasonable doubt that each
> Defendant committed.  Unless you are unanimous in finding beyond a reasonable
> doubt that each Defendant committed a racketeering act charged, you must
> disregard that act in deciding whether that Defendant is guilty or not guilty of
> racketeering.  It is not sufficient that some of the jurors find that Defendant
> Stevens  committed two of the five acts alleged against him while others of you
> find that Stevens committed different acts.  Likewise, it is not sufficient that some
> of the jurors find that Defendant Gilmore committed two of the four acts alleged
> against him while others of you find that Gilmore committed different acts.

[Doc. No. 114, pp. 17-18]; see also [Doc. No. 114, pp. 25-26].  Thus, the jury was properly

instructed, and the Court must assume that the jury followed its instructions.  Defendants did not

request a special verdict form, nor does the Court find that one was required when such clear

instructions were given.

The motion for judgment of acquittal contained in the Motion for Judgment or New Trial

is DENIED on this basis.

**B.    Motions to Dismiss and For New Trial**

Stevens, joined by Gilmore, moves for either the dismissal of the Indictment or a new

trial based on the Government's failure to disclose the Deshotels allegations and the IRS primary

investigation of Hakim. [Doc. Nos. 123 & 129].  Gilmore, post-hearing, filed a Supplemental

Motion for New Trial also asserting the lack of disclosure of the Deshotels allegations and his

30

inability to introduce this evidence at trial. [Doc. No. 160]. Finally, in the alternative to his request for judgment of acquittal, Gilmore, joined by Stevens, moves for a new trial based on reasons unrelated to the Deshotels allegations. [Doc. Nos. 126 & 130].

The Court will first address Defendants' alternative request for a new trial contained in the Motion for Judgment or New Trial.

### 1.    Request for New Trial in the Motion for Judgment or New Trial

Federal Rule of Criminal Procedure 33 permits the district court to "vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a).  Generally, motions for new trial are disfavored and must be reviewed with great caution. *United States v. Gresham*, 118 F.3d 258, 267 (5th Cir. 1997) (citing *United States v. Jaramillo*, 42 F.3d 920, 924 (5th Cir. 1995), and *United States v. Peña*, 949 F.2d 751, 758 (5th Cir.1991)).  "The interest of justice is not an independent ground for granting a Rule 33 motion, but rather is the standard for granting any Rule 33 motion." *United States v. Wall*, 389 F.3d 457, 468 (5th Cir. 2004) (citing *United States v. Villarreal*, 324 F.3d 319, 325 (5th Cir. 2003)).  The trial judge's determination in the interest of justice may be based on his evaluation of witnesses and weighing of the evidence. *Wall*, 389 F.3d at 465-66.  Generally, however, the Fifth Circuit Court of Appeals has held "that the trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict.  A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *Id.* 466 (citations omitted).

Defendants contend in this alternative request that the arguments supporting judgment of

31

acquittal also "factor into the equation for a new trial in the interest of justice," that Hakim's own actions "preponderate heavily against the jury verdict, entitling [them] to a new trial," and that Gilmore suffered substantial prejudice from having his case tried jointly with that of Stevens, particularly because of the admission of out-of-court statements. [Doc. No. 125, p. 3]. Gilmore points to the recorded statements of Stevens and Hakim in which Stevens refers to the secrecy of the payments and to a "Christmas bonus," neither of which was mentioned by Gilmore.

In response, the Government argues that the evidence was not slim, but showed that Defendants accepted things of value knowing that they were offered with the intent to influence their conduct and that they accepted things of value not due them or their office in exchange for performing or not performing certain actions. The Government argues further that it was not required to prove active solicitation. While Hakim, working with the FBI, may have created the issues, Defendants, in the Government's words, "were all too happy to do Hakim's bidding." [Doc. No. 136, pp. 23, 25]. The Government points out that (1) Stevens resolved an issue Hakim had with a fence in one of his developments, (2) both Defendants wrote letters to Ouachita Parish and the Corps of Engineers on Hakim's behalf, (3) both Defendants voted in favor of settling Hakim's lawsuit against the City after Gilmore called Hakim to ensure that he was happy with the settlement, and (4) both Defendants voted to re-zone Hakim's property in the Tower-Armand area.

Based on the evidence cited by the Government and the Court's own review of the testimony and evidence at trial, the Court cannot find that there has been a miscarriage of justice or that the weight of evidence preponderates against the verdict based on the arguments in this

32

motion. The Government presented its recordings and other evidence and its interpretation of the recordings and evidence through Hakim and other witnesses. Defendants likewise had the opportunity to present their witnesses and their interpretation of the recordings and other evidence. Ultimately, the jury made its own credibility determinations, weighed the evidence, and found that the Government had proven its case beyond a reasonable doubt. The alternative motion for new trial contained in the Motion for Judgment or New Trial is DENIED.

### 2. Motion to Dismiss or New Trial and Supplemental Motion for New Trial

In Stevens' Motion to Dismiss or for New Trial [Doc. No. 123], joined by Gilmore [Doc. No. 129]; the Reply in Support of Motion to Dismiss or for New Trial [Doc. No. 145]; the Supplemental Memorandum in Support of Motion to Dismiss [Doc. No. 162]; and Gilmore's Supplemental Motion for New Trial [Doc. No. 160], Defendants argue that the Government's failure to disclose the Deshotel allegations and the IRS primary investigation of Hakim violated *Brady/Giglio.* Alternatively, Defendants argue that the allegations and investigation are newly discovered evidence which should, at the least, result in a new trial, and, according to Stevens, might support the Court's dismissal of the Indictments against both Defendants.

In response, the Government argues that it was not required to disclose the Deshotels allegations and the IRS' primary investigation of Hakim under *Brady/Giglio.* The Government also responds that the evidence is not newly discovered, or, alternatively, that Defendants cannot show that they could probably obtain acquittals based on the evidence. Finally, the Government responds that, even if the Court were to accept Defendants' arguments, the proper remedy is a new trial, not dismissal of the Indictment.

33

The Court first addressed Defendants' *Brady* argument.

### a.    *Brady*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the

suppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or punishment, irrespective of the good

faith or bad faith of the prosecution." *Id.* at 87.    Nine years later, the Supreme Court extended

this principle to include material evidence "affecting" the credibility of a witness.    *Giglio v.*

*United States*, 405 U.S. 150, 154 (1972).    The *Giglio* Court stated:

> When the reliability of a given witness may well be determinative of guilt or
> innocence, nondisclosure of evidence affecting credibility falls within [the] general
> rule [of *Brady*.] . . . We do not, however, automatically require a new trial
> whenever a combing of the prosecutors' files after the trial has disclosed evidence
> possibly useful to the defense but not likely to have changed the verdict . . . . A
> finding of materiality of the evidence is required under Brady. . . A new trial is
> required if the false testimony could . . . in any reasonable likelihood have affected
> the judgment of the jury.

*Id.* at 154 (internal quotation marks and citations omitted).    Thus, the Government must give the

defense exculpatory and impeachment evidence.    *See United States v. Johnson*, 872 F.2d 612,

619 (5th Cir. 1989).

If a defendant moves for a new trial on the basis of a *Brady* violation, the Fifth Circuit has

set forth his burden as follows:

> . . . As the proponent of a new trial, [a defendant] must prove that: "(1) the
> prosecution did not disclose evidence; (2) the evidence was favorable to the
> defense; and (3) the evidence was material." *United States v. Infante*, 404 F.3d
> 376, 386 (5th Cir. 2005).    Evidence is material if there is a reasonable probability
> that the outcome of the trial would have been different had such evidence been
> revealed to the defense. *Id.* "**The question is not whether the defendant would**

34

> more likely than not have received a different verdict with the evidence, but
> whether in its absence he received a fair trial, understood as a trial resulting
> in a verdict worthy of confidence." *United States v. Brown*, 303 F.3d 582, 593
> (5th Cir. 2002) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131
> L.Ed.2d 490 (1995)).

*United States v. Valencia*, 600 F.3d 389, 418 (5th Cir. 2010) (emphasis added).

The Fifth Circuit has recognized the possibility of dismissal of an indictment when a prosecutor has impermissibly withheld material and exculpatory evidence or, acting in bad faith, failed "to preserve potentially useful evidence." *United States v. Moore*, 452 F.3d 382, 387-88 (5th Cir. 2006). However, the Fifth Circuit has also "consistently held that '[g]overnment misconduct does not mandate dismissal of an indictment unless it is so outrageous that it violates the principle of fundamental fairness under the due process clause of the Fifth Amendment.'" *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997) (quoting *United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995) (other internal quotation marks and citations omitted)). "Such a violation will only be found in the rarest circumstances." *Johnson*, 68 F.3d at 902 (citing *United States v. Yater*, 756 F.2d 1058, 1066 (5th Cir. 1985)). A defendant seeking a dismissal of his indictment "has an extremely high burden of proof." *Asibor*, 109 F.3d at 1039.

In this case, the Government's conduct was not so outrageous as to require the dismissal of the Indictment against Defendants. After the FBI and AUSA Griffing learned that Deshotels claimed Hakim was committing criminal tax violations, Agent Allen provided Deshotels' attorney with the telephone number for IRS Supervisory Special Agent Andrew Thornton. AUSA Griffing notified the investigating agent, Heusel, that Hakim was a cooperating witness in another case, asked him to investigate as he would in any other case, but to inform her if he

35

found merit to the allegations, so that she could comply with her obligations under *Brady*. Heusel informed her when he closed the investigation, but did not provide her with any other information. On these facts, to the extent that Defendants move for dismissal of the Indictment against them, the Motion to Dismiss or for New Trial [Doc. Nos. 123 & 129] is DENIED.

Even though the Government's conduct was not so outrageous as to justify dismissal, that conduct may still entitle Defendants to a new trial. The Government undisputedly failed to disclose evidence, and the evidence was favorable to the defense. Therefore, the Court must consider whether the evidence was material.

Defendants argue that, under the facts and circumstances of this case, the Government's burden of disclosure under *Brady/Giglio* was not limited to the AUSA's files and those persons or agencies working as part of the prosecution team or as an arm of the prosecution. Defendants contend that the Government had a duty to disclose the Deshotels allegations, the IRS primary investigation of Hakim, and the IRS's conferral of a benefit on Hakim for three reasons. First, Defendants contend that this evidence, at the least, provided a different avenue to attack Hakim's capacity for truthfulness under Rule 608(b). Second, Defendants contend that the evidence dealt in part with the fraudulent conveyance of the Sherrouse Plantation development property, the same development in which Gilmore was alleged to have offered to buy a lot at reduced value in exchange for helping to obtain City Council approval for the development. Third, Defendants contend that the Deshotels allegations, the IRS primary investigation, and the benefit conferred on Hakim by the IRS served to show Hakim's bias and motivation to assist the Government.

The Government responds that it could have only disclosed the allegations of a

36

disgruntled employee and a closed IRS investigation. According to the Government, Defendants would have been limited to an attack on Hakim's capacity for truthfulness under Rule 608(b), and such evidence would have been cumulative. The Government disagrees that its non-disclosures prevented Defendants from presenting material evidence at trial because the Sherrouse Plantation development property was part of the alleged fraudulent Section 1031 property transfers. The Government argues that "how a particular piece of property was treated for purposes of a capital gains tax is completely irrelevant to the fact that a city councilman wants to buy it for $5,000 to $10,000, when its owner is otherwise offering it for sale at $173,178, and the difference in price is the consideration for the City Councilman's assistance in guiding the project through the necessary approval process of city government." [Doc. No. 164, p.6]. Finally, the Government argues that Defendants could not have used any of the evidence to show bias or motivation by Hakim because he was completely unaware of the IRS primary investigation.

This is a case that hinged on credibility. The recordings of Defendants did not speak alone; they were subject to interpretation by Hakim and by Defendants. It is clear that to reach its verdict, the jury credited Hakim's testimony over that of Defendants and their witnesses. As the Court's ruling on Defendants' Motion for Judgment or New Trial indicates, credibility was key. It is against this backdrop that the Court must render its decision.

In *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973), the Fifth Circuit ruled that the U.S. Attorney should have disclosed impeachment evidence contained in the key witness's personnel file, even though the file was in the possession of another governmental agency, the

United States Postal Service. In that case, the defendants were accused of offering to pay and paying a postal employee to induce him to violate his lawful duty by stealing credit cards from postal customers and giving them to the defendants. The Fifth Circuit was "troubled" by the Government's failure to provide the personnel file of the postal employee, the primary witness against the defendants, on the basis it did not have the file, which was in the hands of the United States Postal Service. 475 F.2d at 57. The district court ruled that "'[T]he prosecution cannot be compelled to disclose something which it does not have. Furthermore, the Post Office Department does not appear to be an arm of the prosecution as contemplated by *Brady*.'" *Id.* The Fifth Circuit found "no reference in *Brady* to an arm of the prosecution." *Id.* Although the Government is not required to obtain evidence from third parties, "there was no suggestion in *Brady* that different 'arms' of the government, particularly when so closely connected as this one for the purpose of the case, are severable entities. And, of course, the *Brady* rule requires the government to supply evidence useful to the defendant simply for impeachment purposes." *Id.*

In a later decision, for purposes of determining the Government's duty to disclose, the Fifth Circuit declined "to draw a distinction of agencies under the same government, focusing instead upon the 'prosecution team' which includes both the investigative and prosecutorial personnel." *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980) (citation omitted).

This case is not identical to *Deutsch*, and it is not clear what test the Fifth Circuit might apply. However, even under the prosecutorial team concept, the Court is troubled by the events that unfolded in this case. The Court understands the dilemma faced by AUSA Griffing and her concern about precedent for future cases. Nonetheless, Deshotels approached, not the IRS, but

38

the FBI, part of the prosecution "team," with his allegations against Hakim.  The FBI agents and AUSA Griffing then made the decision to send Deshotels and his attorney to the IRS without hearing or reviewing his specific allegations against Hakim.  The FBI and U.S. Attorney's Office decided to shield themselves from access to the very materials presented to the IRS.  If they had listened to or reviewed Deshotels' allegations against Hakim, they would have known that the allegations involved Sherrouse Plantation and that the evidence supporting his claim of fraudulent Section 1031 transfers was available in the conveyance records of Ouachita Parish.  Instead, they made the decision to send Deshotels and his attorney to the IRS and then cited IRS privacy laws as preventing them from learning about the alleged fraudulent transfer of the Sherrrouse Plantation property.  Under any test employed by the Fifth Circuit, the Court finds that the Government had actual or constructive possession of sufficient information to know that it had a duty to disclose favorable evidence to Defendants.

The Court must now turn to whether the evidence was material.  First, the Court agrees with the Government that the evidence of Hakim's alleged fraudulent Section 1031 transfers is not material for purposes of attacking Hakim's valuation of the Sherrouse Plantation development property.  If the transfers were fraudulent, then the tax basis Hakim and his companies had in the property are affected.  However, the tax basis does not affect the fair market value of the lot that Gilmore intended to buy.  At trial, the focus was and should be on the fair market value of the lot versus the amount Gilmore offered to pay for it.

However, the Court finds that the evidence was material for other reasons.  Evidence of Deshotels' allegations and the IRS primary investigation would not have been cumulative of the

39

other impeachment and bad reputation evidence offered against Hakim. Certainly, Defendants presented the testimony of Councilman Marx, Mayor Mayo, and Miller to attack Hakim's capacity for truthfulness. However, each of these witnesses was either an elected or appointed official. Notably, Marx admitted that Stevens was a mentor to him. Mayo and Hakim were depicted as having an acrimonious relationship. Thus, the jury had reason to discount each witness' opinion on Hakim's capacity for truthfulness and his reputation in the community.

In contrast, the Deshotels allegations and the IRS primary investigation provided an avenue of attack on Hakim's capacity for truthfulness not otherwise explored. At trial, Hakim held himself out as someone completely unaware that he was paying bribes until one day it occurred to him that he was the victim of Defendants. Then he felt compelled to end this corruption. While the other evidence and testimony showed Hakim to be a tough businessman who was not well-liked by local political figures, Deshotels' allegations and the existence of the IRS primary investigation undercut Hakim's portrayal of himself of an honest businessman seeking to right a wrong.[11]

The undisclosed information also demonstrates that Hakim had a reason to be biased, and the jury was improperly denied the opportunity to consider that bias. Although Hakim was unaware of the IRS primary investigation, he was certainly aware of his own conduct in transferring property to an employee and then having that employee transfer the property back to

---

[11]The Court does not disregard Deshotels' own checkered past. A former attorney, Deshotels was disbarred for stealing or mishandling client funds. The Government would have been able to attack Deshotels and his allegations for that reason and could have portrayed him as a disgruntled former employee.

Hakim, his two brothers, and another Hakim entity. Thus, Hakim had motivation to assist the FBI with an investigation into public bribery and to deflect attention from himself. Defendants would have been able to offer extrinsic evidence of this bias at trial.

Finally, the Court finds that Hakim received a benefit of which the jury was unaware. Because he assisted the FBI in this case, the IRS did not forward his case to the civil unit to determine if an audit should be performed. The Government candidly admits he received a benefit in this way. Thus, Hakim has received the benefit of not having a personal or company audit performed by the IRS, and he may have received the benefit of keeping a large sum money which he and his companies were obligated to pay to the IRS. At this late juncture, even if a civil audit reveals criminal wrongdoing, it is unlikely that another criminal investigation will take place prior to the expiration of the six-year statute of limitations for criminal violations. *See* 26 U.S.C. § 6531.

As the Fifth Circuit has recognized, a defendant's due process rights are violated when he "may have been prevented from effectively cross-examining the government's most important informant, and the jury was unable to properly evaluate [the informant's] testimony." *United States v. Mason*, 293 F.3d 826, 829-30 (5th Cir. 2002); *see generally United States v. Garza*, 574 F.2d 298 (5th Cir. 1978) (when the defendant's defense was an "all-out attack on the credibility of witnesses," the trial court abused its discretion by sending the jury the Government's exhibit detailing part of the agreement with one witness, but failing to send the jury defense exhibits detailing the entire agreement the witness identified in the letter and with another witness, even though the jury heard testimony about all exhibits). In this case, the Court finds that Defendants

41

were also deprived of their due process rights.

The Court had the opportunity to hear all the evidence in this matter, to consider the testimony of the witnesses, and to review the video and audio recordings of Hakim and Defendants. Given the Government's reliance on Hakim's testimony and Defendants' defense of attacking Hakim's credibility, the Court cannot say with confidence that Stevens and Gilmore received a fair trial in the absence of evidence of the Deshotel allegations, the IRS primary investigation, and the benefit conferred on Hakim by the IRS. Therefore, Defendants are entitled to a new trial.

To the extent that Defendants move the Court for a new trial in their Motion to Dismiss or for New Trial, their motion and Gilmore's Supplemental Motion for New Trial are GRANTED.

Further, to the extent that Defendants move the Court to order all evidence related to the IRS primary investigation to be turned over, that portion of the Motion to Dismiss or for New Trial is GRANTED. The Clerk of Court is instructed to make the evidence available to Defendants for their review.

### 3.    Newly Discovered Evidence

Given the Court's conclusion on Defendants' *Brady/Giglio*, the Court need not reach Defendants' arguments for new trial based on newly discovered evidence.

## III.   CONCLUSION

For the foregoing reasons, Gilmore's oral motion for judgment of acquittal [Doc. No. 101] and his Motion for Judgment or New Trial [Doc. No. 126], joined by Stevens [Doc. No.

130], and as supplemented by Gilmore's brief [Doc. No. 141] is DENIED.  Stevens' oral motion

for judgment of acquittal [Doc. No. 102] is also DENIED.

　　　　Stevens' Motion to Dismiss or, Alternatively, for an Order Granting a New Trial [Doc.

No. 123], joined by Gilmore [Doc. No. 129], is GRANTED IN PART and DENIED IN PART.

To the extent that Defendants move for dismissal of the Indictment against them, the motion is

DENIED.  To the extent that Defendants move for a new trial, the motion is GRANTED.  To the

extent that Defendants move the Court to order all evidence related to the IRS primary

investigation to be turned over, that portion of the Motion to Dismiss or for New Trial is

GRANTED.

　　　　Gilmore's Supplemental Motion for New Trial [Doc. No. 160] is GRANTED.

　　　　MONROE, LOUISIANA, this _____14_____ day of ____September____, 2011.


　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　ROBERT G. JAMES
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE