RECEIVED
IN MONROE, LA.

APR 1 8 2012
ℛℭ

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CR. A. NO. 10-200-01** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **ROBERT E. "RED" STEVENS** | **MAG. JUDGE KAREN L. HAYES** |

**WRITTEN REASONS FOR RULING ON OBJECTIONS TO PRE-SENTENCE REPORT
AND THE COURT'S CONSIDERATION OF THOSE FACTORS
UNDER 18 U.S.C. § 3553(a)**

Prior to sentencing in this matter, Defendant Robert E. "Red" Stevens ("Stevens") raised objections to the Pre-Sentence Report. During an in-Chambers conference, counsel for Stevens' Co-Defendant, Arthur Gilmore, Jr. ("Gilmore") raised one additional objection to the Guidelines calculation which applied to both Defendants. In addition, Stevens filed "Defendant's Response to U.S.A.'s Sentencing Memorandum" ("Stevens' Sentencing Memorandum") [Doc. No. 229].

The Government also filed a Sentencing Memorandum [Doc. No. 161].

At the sentencing hearing held on April 16, 2012, the Court ruled on Steven's objections and considered his sentence under those factors set forth in 18 U.S.C. § 3553(a). The Court denied Stevens' objections and, after consideration of the § 3553(a) factors, sentenced him at the low end of the recommended Guidelines range of imprisonment. The Court now issues these written reasons for its rulings and determination of sentence.

I. **OBJECTIONS TO PRE-SENTENCE REPORT**

A. **Objection #1**

Stevens objected to any portions of the Pre-Sentence Report that characterize his conduct

as fraudulent or illegal.

Stevens' objection was duly noted, but no revision to the Pre-Sentence Report was warranted on this basis.  Thus, Stevens' Objection #1 was DENIED.

**B.      Objections #2, #4 & #9**

Stevens objected to paragraphs 7, 12-17, 30 and any other discussion of Co-Defendant Gilmore.

While Stevens correctly pointed out that the case against him and the case against Gilmore were separate, the information in the Pre-Sentence Report was presented as background, as part of the facts presented at trial, and in a manner consistent with the Indictment.  The Court did not rely on the information about or the actions of Gilmore in rendering a sentence in Stevens' case.  Therefore, a revision to the Pre-Sentence Report was not warranted, and Stevens' Objections #2, #4, and #9 were DENIED.

**C.      Objection #3**

Stevens objected to paragraphs 9-11 and the Government's characterization of his activities in the racketeering act identified in the Pre-Sentence Report as Racketeering Act #1. Stevens points out that at trial, the jury only had to find that he committed two of the five acts of racketeering charged against him, so it is unclear whether the jury convicted him of this crime.

The Court reviewed those paragraphs in the Pre-Sentence Report.  The Government correctly points out that its counsel offered to use a special verdict form in this case, but Defendants declined the offer.  Nevertheless, the jury convicted Stevens of at least two of the five acts of racketeering, and the Court may properly include the other acts of racketeering in its loss calculation as relevant conduct as long as the Government proves by a preponderance of the

evidence that Steven committed the acts.  *See* U.S.S.G. § 1B1.3 ("Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of . . .(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]").

With regard to Racketeering Act #1, the Government and Stevens offered differing interpretations of the telephone call.  However, the Court found that the Pre-Sentence Report accurately recounts the conversation, and the Government met its burden of proof that Stevens committed this act by a preponderance of the evidence.  The Court found no revision to the Pre-Sentencing Report was warranted.  Stevens preserved his objections for purposes of appeal, but Objection #3 was DENIED.

D.     **Objection #5**

Stevens objected to factual information contained in paragraph 18 regarding the racketeering act identified in the Pre-Sentence Report as Racketeering Act #4.[1]  Specifically, Stevens objected to the Pre-Sentence Report's characterization of his receipt of money from the Government's informant, Eddie Hakim ("Hakim"), for meal expenses on a business trip.

Again, the Court found that the Pre-Sentence Report accurately recounts events, although

---

[1]The Pre-Sentence Report listed the racketeering acts of both Defendants in chronological order, in the same manner they were identified in the Indictment.  Thus, though Stevens was charged with committing only five acts of racketeering, those acts were identified as Racketeering Acts #1, 4, 6, 7 and 9.

Stevens offered his own explanation for these events at trial and has done so in his objections. To the extent that Stevens objected that this act should not be included in the calculation of loss, the Court found that the Government has met its burden by a preponderance of the evidence, and the act was properly included.   No revision to the Pre-Sentence Report was warranted, and Stevens' Objection #5 was DENIED.

### E.   Objection #6

Stevens objected to factual information contained in paragraph 21 regarding the racketeering act identified in the Pre-Sentence Report as Racketeering Act #6.   Specifically, Stevens objected to the statement that he solicited Hakim for money to assist families during the Christmas season in exchange for possible favors on the City Council.

Again, the Court found that the Pre-Sentence Report accurately recounts events, although Stevens offered his own explanation for these events at trial and has done so in his objections. To the extent that Stevens objected that this act should not be included in the calculation of loss, the Court found that the Government has met its burden by a preponderance of the evidence, and the act was properly included.   No revision to the Pre-Sentence Report was warranted, and Stevens' Objection #6 was DENIED.

### F.   Objection #7

Stevens objected to factual information contained in paragraphs 22 and 23 regarding the racketeering act identified in the Pre-Sentence Report as Racketeering Act #7.   Specifically, Stevens denied soliciting money from Hakim to pay his daughter's medical expenses.   Stevens characterized the Government's activities in this regard as entrapment and designed to increase the amount of the fraud.

The Court reviewed these paragraphs, but found no revision to the Pre-Sentence Report was warranted. While Stevens did not request a specific amount from Hakim, he did request money. Stevens' objection is part of the record. To the extent that Stevens objected that this act should not be included in the calculation of loss, the Court found that the Government has met its burden by a preponderance of the evidence, and the act was properly included. Stevens' Objection #7 is DENIED.

### G.    Objection #8

Stevens objected to paragraphs 27 and 28 which describe his request for money from Hakim to purchase Christmas turkeys and to receive a "bonus" in return for favors before the City Council. Stevens argued that "[a]t most, only $700.00 of this amount should be considered for the amount of loss."

Again, Stevens offered his own characterization of events, but the Government presented sufficient evidence to meet its burden of proof that Stevens committed this act of racketeering by a preponderance of the evidence. No revision was warranted, and Stevens' Objection #8 was DENIED.

### H.    Objections #10 and #11

In Objection #10, Stevens objected to paragraph 31, which details the facts supporting the application of the enhancement for obstruction of justice. Stevens also again objected to the reference to Gilmore. In Objection #11, Stevens also objected to the obstruction of justice enhancement.

To the extent that Stevens objected to the reference to Gilmore, his Objection #10 was DENIED for the same reasons for the denial of Objections # 2, 4, & 9.

With regard to Stevens' objections to the facts supporting the application of the

obstruction of justice enhancement, the Pre-Sentence Report identifies the following statements

from Stevens' trial testimony:

1.      Eddie Hakim testified he had been paying money to Stevens since 2004, initially through a third party (Johnny Maroney), but later directly.  Stevens denied accepting any money from Hakim prior to February 28, 2008, except for a reported 2004 campaign contribution.

2.      Stevens testified he intended to report the $1,000 Hakim gave him on February 28, 2008, as a campaign contribution and only did not because he realized, afer he left the restaurant, the contribution was in cash and [he] did not know how to report cash.

        In reality, when Hakim tendered the money, Stevens said "between me, you, and nobody else?" thus showing Stevens never intended to report the money.  Furthermore, during cross-examination, Stevens was forced to admit the reporting form for contributions did not exclude cash payments.

3.      The Government provided a transcript of an excerpt from the recording made of the February 28, 2008 meeting between Hakim and Stevens.  In this excerpt, the discussion between Hakim and Stevens suggests Hakim had given Stevens money in the past. During cross-examination, Stevens claimed the conversation referred only to the $1,000 given to him that day.

4.      Stevens denied Hakim's help or money was contingent upon [Stevens] helping [Hakim]. This in spite of the numerous instances where Hakim said he would help Stevens because Stevens had always helped him.

5.      In a December 14, 2009, telephone call, Stevens asked Hakim for $300 for the purchase of 20 turkeys.  An excerpt from the transcript of the call contains Stevens saying ". . . and if you want to give me a Christmas bonus, I appreciate it."

        Stevens testified he was only joking, that he did not expect Hakim to give him a bonus, and he did not know the money Hakim gave him on December 18, 2009, was more than the $300 he requested for the turkeys.  He specifically testified he did not know Hakim had given him $1,000 that day.  During cross-examination, the Government played the portion of the tape where Hakim specifically told Stevens that it was $1,000.  At that point, Stevens had to recant.

Pre-Sentence Report, pp. 6-7 (boldface type deleted).  The Probation Officer concluded, and the

Government agrees, that the statements were sufficient to require the application of the enhancement.

Under U.S.S.G. § 3C1.1, a defendant is enhanced two levels if he has "(A) . . . willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." Application note 2 instructs that, in applying this provision with respect to alleged false statements by the defendant, "the [court] should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1, n.2. On the other hand, if a defendant commits perjury or suborns or attempts to suborn perjury, the enhancement applies "if such perjury pertains to conduct that forms the basis of the offense of conviction." *Id.* at n.4(b).

The Supreme Court has explained that a defendant testifying under oath commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). "[I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition . . . set out." *Id.* at 95; *see also United States v. Johnson*, 352 F.3d 146, 148 (5th Cir. 2003) (stating that the court must "identify false testimony concerning a material matter" and "indicate the witness testified with willful intent to provide false testimony."). However, "[u]pon a proper determination that

7

the [defendant] has committed perjury at trial, an enhancement of sentence is required by the Sentencing Guidelines." *Dunnigan*, 507 U.S. at 96.  That is, if Defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory," he must be enhanced two levels. *Id.* at 94.

In this case, some of the statements identified by the Probation Officer might be subject to interpretation and, thus, not sufficiently "willful" to meet the standard.  Further, some of the statements were not material. Nevertheless, at the least, the Government has proven by a preponderance of the evidence that Stevens  perjured himself when he testified that he intended to report the $1,000 Hakim gave him on February 28, 2008, as a campaign contribution and that he perjured himself when he testified that he was joking about getting a Christmas bonus from Hakim.  Thus, the obstruction of justice enhancement must be applied.  The portion of Objection #10 relating to obstruction of justice and Objection #11 were both DENIED.

## I.      Objections #12, #13 & #14

In Objections #12, #13, and #14, Stevens argued that, based on his other objections, the loss of $6,300 was not clearly established, the obstruction of justice enhancement should not have been applied, and his total offense level should be revised to 20.  As a result, Stevens contended that he should have a Guidelines range of imprisonment of 33-41 months and a fine range of $7,500-$75,000.

For the foregoing reasons, Stevens' Objections #12, #13, and #14 were DENIED.

## J.      Additional Objection Raised in Chambers

Finally, during an in-Chambers conference, counsel for Gilmore raised one additional late objection to the Pre-Sentence Report.  Counsel argued that Gilmore should not have been

enhanced  four levels for his position as an "elected" official under U.S.S.G. 2C1.1(b)(3) because

his base offense level of 14 already took into account his status as a "public" official.    Stevens

did not specifically join in this objection, but, out of an abundance of caution, the Court

addressed the objection as to both Defendants since the same enhancement applied to both of

them.

As noted, pursuant to U.S.S.G. § 2C1.1(a)(1), Stevens' base offense level was set at 14

because he was a public official.  The Pre-Sentence Report also enhanced Stevens 4 more levels

under § 2C1.1(b)(3) because he was an elected public official.  It was this four-level

enhancement which counsel argued was impermissible double counting.  However, the

Guidelines do not contain a general prohibition against double counting.  *See United States v.*

*Calbat*, 266 F.3d 358, 364 (5th Cir. 2001) (citation omitted).  "Rather, double-counting is

prohibited only if it is specifically forbidden by the particular guideline at issue."  *Id.* (citation

omitted).  In this case, the Guidelines specifically contemplate that a public official will have a

lower offense level from an *elected* public official.  As the commentary notes, a public official is

construed broadly to cover persons who are not even employees of a local or state government.

U.S.S.G. § 2C1.1 cmt. n. 1 (definition of "Public official").  However, the broad definition of

public official "does not 'fully account[ ]' for the harm that is inflicted when the trust that the

official betrays was conferred on him in an election.  Being a bribe-taking 'elected public

official' is different from being a run-of-the-mill, bribe-taking, non-elected 'public official.'"

*United States v. White*, 663 F.3d 1207, 1217 (11th Cir. 2011).  Accordingly, to the extent that

Stevens joined in Gilmore's late objection to the Pre-Sentence Report, the additional objection

was DENIED.

## II.   CONSIDERATIONS UNDER 18 U.S.C. § 3553(a)

Stevens also filed a Sentencing Memorandum [Doc. No. 229] in which he contends that the Court should consider a non-Guidelines sentence in his case.

Prior to imposing sentence, the Court considered whether the recommended Guidelines range of imprisonment reasonably addressed Stevens' criminal conduct and adequately reflected (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) pertinent sentencing commission policy statements; (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).

The  United States Sentencing Commission has increased the range of imprisonment for Gilmore's offenses of conviction based on valid policy considerations.  While the amendments to the Guidelines has resulted in a greater range of imprisonment, the Court does not find that Guidelines range to be unreasonable.  While Stevens has certainly otherwise led an honorable life, so have many other white-collar defendants who have appeared before this Court.  After consideration of all the § 3553(a) factors and given the nature of the crime, the Court determined that the factors, on balance, did not warrant a sentence outside the Guidelines range.  Instead, the

Court sentenced Stevens to the low end of the recommended Guidelines range.

MONROE, LOUISIANA, this _____18_____ day of April, 2012.

_____

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

11