UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 10-00200-01 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ROBERT E. "RED" STEVENS | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is Defendant Robert E. "Red" Stevens' ("Stevens") Motion for Release Pending Appeal [Doc. No. 248]. For the following reasons, Stevens' motion is GRANTED.

### FACTS AND PROCEDURAL HISTORY

On June 23, 2010, Stevens, along with Co-Defendant Arthur Gilmore, Jr. ("Gilmore"), was charged in an Indictment with one violation each of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count 1) and the Hobbs Act, 18 U.S.C. § 1951 (Count 2).

After a number of pre-trial motions, a trial was held between April 27 and May 10, 2011. During trial, Eddie Hakim ("Hakim"), a Monroe businessman, was the Government's primary witness. The Government presented video and audio recordings of Hakim's meetings and conversations with each Defendant. Hakim testified that Stevens and Gilmore had accepted bribes from him, detailed the nature of the bribes, and testified as to the content of the recordings. Stevens and Gilmore took the stand in their own defense, disputed Hakim's interpretation of the recordings, denied that they had accepted bribes, and offered their own explanations of the recordings.

At the conclusion of trial, the jury returned guilty verdicts against both Defendants on Counts

1 and 2.

Following trial, Defendants timely filed post-trial motions seeking dismissal of the Indictment, a judgment of acquittal, or a new trial. In their "Motion to Dismiss or, Alternatively, for an Order Granting a New Trial" ("Motion to Dismiss or for New Trial") [Doc. Nos. 123 & 129],[1] Defendants argued that they were entitled to a new trial because the Government withheld discoverable evidence regarding allegations made by Hakim's former employee, Blake Deshotels ("Deshotels"), that Hakim had committed tax fraud and evasion and that the IRS conducted a primary criminal investigation of Hakim based on these allegations. Among other claims, Deshotels alleged that Hakim sold property in Houston, Texas, in 2005, which would have resulted in substantial taxable gains, but that Hakim "used multiple fraudulent property transfers to evade the capital gains tax of over $2,000,000.00." [Doc. No. 123, Deshotels Affidavit ("Deshotels Aff."), p.3]. According to Deshotels, the Hakim family "took the majority of their property in Ouachita Parish including the farm at LoneWa, the Sherrouse Plantation Development property, the building on St. Charles and the old K-Mart building and 'sold' it to an employee named David. L. Moses." [Doc. No. 123, Deshotels Aff., p. 3]. Deshotels further alleged that "Moses then 'sold' the property back to the Hakim brothers and Penny Realty[, a Hakim company]." [Doc. No. 123, Deshotels Aff., p. 3].

On August 15, 2011, the Court held a hearing on Defendants' Motion to Dismiss or for New Trial. The parties did not present witnesses, but stipulated to the testimony that the witnesses would have given.

---

[1] Defendants have adopted each other's motions numerous times throughout this case. For ease of reference, the Court refers to the motions as being filed by "Defendants," rather than differentiating which Defendant filed each motion.

On August 18, 2011, in support of the Motion to Dismiss or for New Trial, Stevens filed an affidavit from a tax expert, David Gun, in the record. [Doc. No. 159].

On August 25, 2011, Stevens filed a Supplemental Memorandum in Support of Defendants' Motion to Dismiss or for New Trial. [Doc. No. 162].

On September 1, 2011, the Government filed a Supplemental Response to the Motion to Dismiss or for New Trial. [Doc. No. 164].

On September 14, 2011, the Court issued a Ruling and Order [Doc. Nos. 171 and 172], granting Defendants' Motion to Dismiss or for New Trial in part. The Court rejected the Government's arguments that Stevens had failed to timely raise the issue of Deshotels' allegations. The Court then concluded that the Government had violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose evidence favorable to the defense, that the evidence was material, and that Defendants did not receive a fair trial in the absence of this evidence. Specifically, in the September 14, 2011 Ruling, the Court found that the Government agents involved in Defendants' prosecution had "shield[ed] themselves" from full knowledge of Deshotels' allegations against Hakim and, as a result, had "actual or constructive possession of sufficient information to know that [they] had a duty to disclose favorable evidence to Defendants." [Doc. No. 171, p. 39]. This "[e]vidence of Deshotels' allegations and the IRS primary investigation would not have been cumulative of the other impeachment and bad reputation evidence offered against Hakim [because it] completely undercuts his portrayal of himself of an honest businessman seeking to right a wrong." *Id.* at pp. 39-40.

> The undisclosed information also demonstrates that Hakim had a reason to be biased, and the jury was improperly denied the opportunity to consider that bias . . . . [Hakim] was certainly aware of his own conduct in transferring property to an

3

> employee and then having that employee transfer the property back to Hakim, his two brothers, and another Hakim entity [the so-called Section 1031 transfer]. Thus, Hakim had motivation to assist the FBI with an investigation into public bribery and to deflect attention from himself. Defendants would have been able to offer extrinsic evidence of this bias at trial.

*Id.* at pp. 40-41. Finally, as a result of the Government's failure to disclose the information and evidence, the Court found that Defendants were denied the opportunity to effectively cross-examine Hakim about his receipt of a benefit "of not having a personal or company audit performed by the IRS" and the possible benefit of "keeping a large sum [of] money which he and his companies were obligated to pay to the IRS." *Id.* at p. 41. Ultimately, "[g]iven the Government's reliance on Hakim's testimony and Defendants' defense of attacking Hakim's credibility, the Court [could not] say with confidence that Stevens and Gilmore received a fair trial in the absence of evidence of the Deshotel[s] allegations, the IRS primary investigation, and the benefit conferred on Hakim by the IRS." *Id.* at p. 42. Thus, the Court vacated Defendants' convictions and ordered a new trial.

On October 26, 2011, the Government filed a Motion to Reconsider. [Doc. No. 193].

On November 28, 2011, Stevens filed a Response to the Government's Motion to Reconsider Grant of New Trial. [Doc. No. 207].

On December 12, 2011, the Government filed a reply memorandum. [Doc. No. 211].

On January 11-12, 2012, the Court held a hearing on the Government's Motion to Reconsider. The Government presented testimony from (1) Myra Hale, an employee of the Hakim company, Control Services; (2) David Moses, also an employee of Control Services, a family friend of the Hakims, and the person to and from whom alleged improper property transfers were made; (3) Hakim; (4) Joseph Hakim, Hakim's brother and an employee of Control Services; (5) Joe D. Guerriero, Hakim's in-house counsel; (6) Steve Pickering, Hakim's in-house accountant; (7) Bubba

Via, Hakim's outside accountant; (8) Jay Hopper, Moses' friend and local restauranteur; and (9) IRS Agent Jude Armand. Defendants did not present any witnesses. At the conclusion of the hearing, the Court took the Government's Motion to Reconsider under advisement.

On January 17, 2012, with leave of Court, the Government filed a supplemental affidavit from Agent Armand. [Doc. No. 222].

On March 29, 2012, the Court issued a Ruling [Doc. No. 225] and Order [Doc. No. 226] granting the Government's Motion to Reconsider. After reviewing the additional evidence and testimony presented at the January 11-12, 2012 hearing, the Court concluded that the Government's *Brady* violation did not result in the suppression of material evidence. Specifically, the Court found that Hakim had no motivation to assist the FBI if he had no reason to fear consequences as a result of the Section 1031 exchange. If the IRS could not find that Hakim engaged in intentional wrongdoing, in part because Hakim acted on the advice of his accountant, a former IRS agent, then Deshotels' allegations would only be a cumulative attack on Hakim's credibility and reputation, this time by a disgruntled former employee, instead of adversarial political figures.

Further, the Court found that neither Defendant suffered a due process violation because of the Government's failure to disclose the IRS' delay in referring Hakim's case to the civil division. Since neither the Assistant United States Attorney, the FBI, nor Hakim knew of the IRS' action, Hakim was not asked about it at trial. Rather, Hakim testified truthfully that no one with the Louisiana State Police, the FBI, the U.S. Attorney's Office, or the state district attorney's office had made him any promises or given him any assurances as to whether he might be prosecuted for giving bribes.

While the Court was and is disturbed that the IRS chose to delay a civil audit of Hakim

5

because of his status as an FBI witness and apparently had no intention of conducting a civil audit of his brothers or Penny Realty, the evidence suggests that an IRS civil investigation would have revealed only that the statute of limitations had run on Hakim's failure to pay taxes on his portion of the difference between the price of the sale of the Houston property and the purchase of the Section 1031 exchange property. In the Court's opinion, such evidence was not material and did not justify a new trial.

Finally, the Court rejected Defendants' argument that Hakim and Joseph Hakim testified falsely about their development of the Sherrouse Plantation subdivision. The Indictment alleged that Stevens' Co-Defendant Gilmore[2] committed an act of racketeering by agreeing to help Hakim "with specific matters coming before the City of Monroe" in return for a "reduced purchase price" for a lot in the undeveloped Sherrouse Plantation subdivision. [Doc. No. 1, pp. 5-6]. Hakim's brother, Joseph, testified that the subdivision had been in development since the late 1990s, and both Hakim brothers testified that the purchase of two pieces of Desiard Street property on September 30, 2004, was the beginning of the land acquisition. Hakim described the development as an exclusive subdivision, and he testified that the lot Gilmore offered to buy for $5,000-$10,000 would actually be sold for approximately $175,000.

Gilmore addressed Hakim's claims by testifying that he lived very near the Sherrouse Plantation subdivision development, that he was familiar with the area, and that his offer on the lot was a fair value. His attorney also thoroughly cross-examined Hakim about the price that he paid for the raw land, the fact that the subdivision still had not been developed three years after the alleged bribe, and the fact that he had not sold all the lots in Maison Orleans, another Hakim

---

[2]Stevens was not alleged to have any involvement with this act of racketeering.

subdivision upon which he based the Sherrouse Plantation lot prices.

All parties and the Court now know that in May 2005, a Hakim company, Northeast Realty, sold the same two pieces of Desiard Street property that began the land acquisition for the subdivision to a Hakim employee, Moses, for the same price Northeast Realty had paid in September 2004. The Hakims were aware that Moses wanted to expand the existing trailer park on one piece of property and to build ballfields and concession stands on the other piece of property. The parties and the Court are also aware that Moses never paid a single dollar on the purchase of these properties. Eight months later, in January 2006, Moses sold these same two pieces of property back to the Hakims for the same price.

The Court concluded that this new evidence would have been useful, at least to Gilmore, but there was no reasonable probability that it would have affected the jury's judgment.

Following the Court's granting of the Government's Motion to Reconsider, a sentencing hearing was held on April 16, 2012. Stevens was sentenced to a term of imprisonment of 51 months on Counts 1 and 2, to run concurrently. He was ordered to report to the facility designated by the Bureau of Prisons by June 11, 2012.

On the date of sentencing, April 23, 2012, Stevens filed a Notice of Appeal [Doc. No. 247] and Motion for Release Pending Appeal [Doc. No. 248]. On April 25, 2012, the Government filed a memorandum in opposition to Steven's motion.

## LAW AND ANALYSIS

Under 18 U.S.C. § 3143(b), a person who has been convicted of or pled guilty to an offense and sentenced may not be released pending appeal unless he establishes the following four factors:

(1)    that he is not likely to flee or pose a danger to the safety of any other person

>     or the community if released;
>
> (2) that the appeal is not for purposes of delay;
>
> (3) that the appeal raises a substantial question of law or fact; and
>
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal, in an order for a new trial, in a sentence without imprisonment, or in a sentence with reduced imprisonment.

*United States v. Clark*, 917 F.2d 177, 179 (5th Cir. 1990) (interpreting 18 U.S.C. § 3143(b)). A substantial question is one "that is 'close' or 'that could very well be decided the other way' by the appellate court." *Id.* at 180 (internal citations omitted).

The Court agrees with Stevens that he does not pose a flight risk or a danger to others and that his appeal has not been taken for the purpose of delay.

Stevens appeals the Court's decision to grant the Government's Motion to Reconsider, which, in effect, would reinstate this Court's previous ruling that a new trial was warranted. Thus, a decision of the United States Court of Appeals for the Fifth Circuit in favor of Stevens is "likely to result in an order for a new trial." 18 U.S.C. § 3143( b)(4). The real issue before the Court is the third factor: whether Stevens' appeal raises a substantial question of law or fact.

Stevens states in his motion that there is no serious argument

> . . . . that the issues raised in the Motion [to Dismiss or for New Trial] and the government's Request for Reconsideration raise substantial issues of law and fact. Countless pages, multiple days of testimony, and much time has been spent debating the issues raised. If ever one was present, these issues are certainly 'fairly debatable' and present close questions.' It is apparent the Court struggled with these issues, both on the original Motion [to Dismiss or for New Trial] and the government's Request for Reconsideration, due to the time spent considering the issues prior to ruling.

[Doc. No. 248, pp. 3-4].

8

In response, the Government argues that there is a presumption against release pending appeal, and Stevens has failed to meet his burden under the third factor of demonstrating a substantial question of law or fact. The Government contends that Stevens has discounted the standard of review that will be used by the Fifth Circuit in evaluating the denial of the motion for new trial. The Fifth Circuit reviews the denial of a motion for a new trial for abuse of discretion, but considers alleged *Brady* violations *de novo,* giving deference to the "factual findings underlying the district court's decision." [Doc. No. 252, p. 4 (quoting *United States v. Turner*, 674 F.3d 420, 428 (5th Cir. 2012)]. While the Court's initial ruling on Defendants' Motion to Dismiss or for New Trial was based strictly on legal grounds, the Government argues that the Court's granting of its Motion to Reconsider was based on an analysis of all the factual evidence, and, under the deferential standard applied by the Fifth Circuit, the Court's ruling will be upheld.

As Stevens points out, the Court has, indeed, struggled with many aspects of this case. However, in its Motion to Reconsider, the Government did not contest the Court's determination in the ruling on the Motion to Dismiss or for New Trial that the Government withheld discoverable evidence, in violation of *Brady*. Instead, the Government argued that no "'real'" *Brady* violation occurred because there is no "'reasonable possibility that the suppressed evidence would have produced a different verdict.'" [Doc. No. 193 (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999))]. While the Court believes that it made the right decision, regardless of the standard applied, the Court also finds that it is a close question whether the Government's *Brady* violation resulted in the suppression of material evidence.

## CONCLUSION

For the foregoing reasons, Stevens' Motion for Release Pending Appeal [Doc. No. 248] is

9

GRANTED. Stevens shall remain free on a personal recognizance bond pending the outcome of his appeal to the Fifth Circuit.

MONROE, LOUISIANA, this 3rd day of May, 2012.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE