U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

APR 12 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

---

UNITED STATES OF AMERICA             CRIMINAL NO: 10-00200

VERSUS                               JUDGE DONALD E. WALTER

ROBERT E. STEVENS, ET AL.

---

## MEMORANDUM RULING

Before the Court is a motion for transfer within the district filed on behalf of the Defendants [Doc. 336]. For the following reasons, Defendants' motion is hereby **DENIED**.

## I. PROCEDURAL HISTORY

On June 6, 2010, Defendants Robert "Red" Stevens and Arthur Gilmore were indicted for allegedly violating the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(c), and the Hobbs Act, 18 U.S.C. § 1951. On May 10, 2011, following a ten-day jury trial in front of then Chief Judge James in Monroe, Louisiana, defendants were found guilty on all counts.

On the last day of testimony, Carey Underwood, counsel for Stevens, was contacted by Blake Deshotels and asked if Mr. Underwood was aware that Deshotels contacted the IRS with allegations that Eddie Hakim, the Government's primary witness against Stevens and Gilmore, had committed criminal tax violations. Deshotels added that the IRS concluded its investigation against Hakim shortly before Stevens and Gilmore were indicted.

Stevens filed a motion to dismiss on June 13, 2011, which was adopted by Gilmore. Gilmore filed a motion for post-verdict judgment of acquittal, or in the alternative, a motion for a new trial, on June 16, 2011, which was adopted by Stevens. The motions addressed, *inter alia*, Hakim's tax

1

liability. The motions were fully briefed by the defendants and the Government, and the Court set the motions for a hearing on August 15, 2011. Following the hearing, the Court requested additional briefing from the parties. On September 14, 2011, Judge James issued a memorandum ruling denying the motions for dismissal of the indictment, and granting the motion for a new trial. The Court found that the Government breached its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963) in failing to disclose material information regarding the Eddie Hakim tax investigation.

After receiving an extension of time to file, the Government filed a motion for reconsideration of the ruling granting a new trial on October 26, 2011. Once the motion was fully briefed by both sides, the Court held a two-day evidentiary hearing which largely centered on the merits of the tax allegations against Eddie Hakim. Following the hearing, the Court took the matter under advisement. On March 29, 2012, the Court issued a memorandum ruling and accompanying order granting the Government's motion for reconsideration and reinstating the Defendants' convictions. In short, the Court's ruling concluded that the evidence at the hearing showed that, while a *Brady* violation may have occurred, the undisclosed evidence was not material. Therefore, the evidence did not support a new trial.

Defendants were sentenced on April 18, 2012 and ordered to self-report to the designated institution on June 11, 2012. Stevens filed a notice of appeal on April 23, 2012 and was released pending appeal on May 3, 2012. The Court granted Gilmore's motion for bail pending appeal on May 3, 2012 and Gilmore filed a notice of appeal on May 23, 2012.

On September 12, 2012, the Government disclosed to defense counsel, in chambers, information regarding a personal relationship between the lead Assistant United States Attorney and the lead FBI case agent from the case. The Government related that the relationship was ongoing

2

during the investigation and trial of this case. On October 17, 2012, Defendants filed another motion for a new trial based on newly discovered evidence. The Fifth Circuit granted a motion filed by the Defendants to stay the appeal pending resolution of the motion for a new trial. The Government filed an opposition to the motion for a new trial on November 1, 2012 and the Defendants filed a reply brief on November 19, 2012.

On December 3, 2012, the case was reassigned to this Court. A hearing was set for the motion for a new trial on March 4, 2013, with a status conference set for February 28, 2013. At the status conference, the Government consented to a new trial in order to ensure that justice was not only done, but also appeared to be done. The evidentiary hearing set for March 4, 2013 was continued without date. The parties and the Court proceeded to discuss dates for the new trial.

The Court advised the parties that, unless they were able to begin on Thursday May 9, 2013, April 22, 2013 would be the last available date until at least August. In light of that, the parties agreed to the April 22, 2013 setting. The Court then raised the possibility of trying the case in Shreveport instead of Monroe. The Government indicated that it would be happy to try the case in Shreveport, but acknowledged that the charges were brought in Monroe. The Defendants stated that they would prefer Monroe due to the convenience to the Defendants, witnesses, attorneys, and friends and family. After discussing the publicity the case had received, with both sides agreeing that jury selection in Monroe would be arduous at best while jury selection in Shreveport would be fairly uncomplicated, the Court decided that the new trial would be moved from the Monroe Division to the Shreveport Division.

Following the status conference, the Court contacted the clerk of court for the United States 5th Circuit Court of Appeals to arrange for the case to be remanded for a new trial. Once the order

remanding the case was signed, this Court entered an order granting a new trial on the basis of the parties' consent on March 4, 2013, and on March 6, 2013 the Court ordered that the judgments of the original trial be vacated.

Defendants filed this motion to transfer the case back to Monroe on March 27, 2013. [Doc. 336].

## II. LAW AND ANALYSIS

This analysis must begin by noting that only an interdistrict transfer implicates the Constitution—"there is no basis for inferring the existence of a constitutional right to trial within the *division* where a criminal defendant lives or where a crime was committed." *U.S. v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002). Federal Rule of Criminal Procedure 18 requires the court to "set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." In addition to convenience and the prompt administration of justice, a court may consider other factors such as docket management, courthouse space and security, and pretrial publicity. *Lipscomb*, 299 F.3d at 342. The court is vested with broad discretion in balancing these factors. *In re Chesson*, 897 F.2d 156, 159 (5th Cir. 1990).

Defendants request an intradistrict transfer of the trial from the Shreveport Division to the Monroe Division. Their request is entirely premised on the first factor listed in Rule 18—the convenience of the defendants, the witnesses, defense counsel, and Defendants' families and friends who would like to attend the trial. [Doc. 336]. The Government opposes the request, focusing on the problems implicit in holding the trial in the small town of Monroe after nearly three years of extensive publicity.

**A. Convenience to Defendants**

4

In their motion for intradistrict transfer, Defendants argue that trial in Shreveport would be inconvenient. Although their request is reasonable, the convenience to the Defendants, the witnesses, defense counsel, and the Defendants' families and friends do not outweigh the other factors discussed below which support trial in Shreveport. Moreover, the Federal Building in Monroe is only 98.6 miles from the Shreveport Courthouse—a commute of only one and one-half hours.[1] While this commute may be inconvenient for some, it will not prevent friends and family from attending the trial if they so desire.

The Court also notes that, although the witnesses will still have to travel from Monroe to Shreveport, Defendants have been granted leave to proceed in forma pauperis. As such, attorneys' fees, witness fees, and travel expenses for the witnesses and attorneys will be paid by the Government—the Defense will not be forced to bear additional cost due to the transfer.[2]

Although the convenience factor weighs in favor of trial in Monroe, other considerations in this case provide overwhelming reason to hold the trial in Shreveport.

## B. Prompt Administration of Justice and Logistical Concerns

The second factor enumerated in Rule 18 is "due regard to...the prompt administration of justice." This factor requires the court to ensure that trials comply with the Speedy Trial Act. *See Lipscomb*, 299 F.3d at 341–42. Although the Defendants have waived their rights under the Speedy

---

[1] Driving Directions from Monroe, La. To Shreveport, La., Google Maps, https://maps.google.com/maps?saddr=201+Jackson+Street,+Monroe,+LA&daddr=300+Fannin+St,+Shreveport,+LA&hl=en&sll=32.544769,-92.932143&sspn=1.942454,2.469177&geocode=FUXt7wEd-22C-ilPza8lZkguhjFEeyfwlWgAJQ%3BFT8n8AEdTX9p-im1qAggLs02hjFE5Csmf6gxCA&oq=201+Jackson+&mra=ls&t=m&z=9.

[2] Not only will the Defendants not be forced to bear additional costs, the Government will likely save money by holding the trial in Shreveport. *See* Part II.C. *infra.*

Trial Act, a Defendant's willingness to waive his rights under the Act does not relieve the Court of its duty to consider this factor. *U.S. v. Dickie*, 775 F.2d 607, 610 (5th Cir. 1985). Moreover, the "prompt administration of justice" refers not only to the case being transferred, but to other trials on the court's docket. *Lipscomb*, 299 F.3d at 442.

The Monroe Federal Building only has one district courtroom.[3] Accordingly, the Federal Building is capable of holding only one jury trial at a time, whereas the Shreveport Courthouse has four courtrooms available. The resident judge in Monroe, Judge James, is presiding in the case of *United States v. Broussard*, No. 3:12-cr-00260 (W.D. La.), which was given an April 23, 2013 setting on January 17, 2013. *See* No. 12-260, Rec. Doc. 23. Notably, the defendant in that case has not waived his rights under the Speedy Trial Act, and the current trial date leaves only one extra week before the speedy trial delay lapses. Thus, practical and legal considerations make trial in Monroe impossible on the current trial date.

This Court granted a new trial in this case on March 4, 2013. [Doc. 319]. Before selecting the April 22, 2013 trial date, the attorneys met with the Court in chambers to discuss scheduling. The attorneys and Court agreed that April 22, 2013 would be the best available setting. The Court also noted during the conference that, unless the trial were to begin on a Thursday, April 22, 2013 would be the last available date until at least August 2013. Thus, the prompt administration of justice in this case, and in the *Broussard* matter, is best served if this case is tried in Shreveport.

Overall, the "prompt administration" factor and logistical concerns weigh in favor of holding trial in Shreveport and denying Defendants' motion.

---

[3] Discussion of the "prompt administration" prong in this case will necessarily involve consideration of various logistical considerations. *See Lipscomb*, 209 F.3d at 343 ("Courtroom availability, unsurprisingly, is a permissible consideration.").

6

### C. Pretrial Publicity and Judicial Economy

The final factor to consider in this case is pretrial publicity. Because Defendants are both Monroe city councilmen, this case has been the subject of extensive publicity since they were indicted. Significantly, the local newspaper in Monroe—the Monroe News Star—thoroughly covered their original trial, conviction, motions for new trial, the Court's order granting the new trial, the Court's reconsideration and subsequent denial of the new trial, and Defendants' sentencing.[4] Similar stories were covered by KTVE/KARD-TV, the NBC Fox affiliates in Monroe, and KNOE-TV, the CBS affiliate in Monroe. The same sources reported in detail (and continue to report) the recent developments in the case, including the Court's ruling on a motion in limine which excluded irrelevant evidence related to the personal relationship between the original prosecutor and FBI agent on the case and limited the scope of other extrinsic evidence. Conversely, this case has only been mentioned in a handful of articles in Shreveport.

This Court understands that the case has been the "talk of the town" in Monroe. After 28 years on the bench, seven as the Monroe resident judge, this Court knows that attempting to pick a jury in Monroe would be an expensive and time consuming endeavor for two significant reasons. First, the Defendants were found guilty in the first trial and the verdict was widely reported throughout the Monroe Division. Potential jurors will likely have knowledge of the facts of the case, including the original guilty verdict and the original sentence. Second, media coverage of the post-trial events has been as pervasive, if not more so, as the coverage of the initial trial. The Defendants' allegations of criminal tax issues involving the Government's primary witness, as well as issues

---

[4] See Exhibit A to this ruling for copies of many of the articles discussing the first trial. Exhibit B includes examples of articles covering events arising after the verdict in the first trial.

7

involving an improper personal relationship between an Assistant United States Attorney and an FBI Special Agent have been briefed extensively in this Court. Given the nature of these issues, the newspaper and TV stations have covered nearly every filing since the original post-verdict motions were filed.

Due to the publicity, trial in Monroe would require an intensive jury selection, including extensive individual voir dire of potential jurors that have knowledge of the case. The Court would expect many jurors to be excused for cause given the particularly prejudicial reporting of the initial guilty verdict. Therefore, a much larger than average jury venire would be required, adding the expense of juror fees for the additional prospective jurors. Furthermore, given the likelihood of continued publicity and extensive daily coverage during trial, a fair trial would likely be assured only by sequestering the jury. Even disregarding the extreme inconvenience to the jurors, the costs associated with sequestering the jury would be exorbitantly high. Given the recent fiscal problems and the enormous budget cuts thrust on the judiciary due to sequestration, the burden of trial in Monroe is not justifiable given the reasonable alternative of holding trial in Shreveport.

The Shreveport Division has a considerably larger jury pool than the Monroe Division, making it less likely that a significant number of potential jurors have been tainted by the publicity. Monroe, Louisiana has a population of approximately 50,000 people, and the parishes included in the Monroe Division have a total population of approximately 355,000.[5] Shreveport has a population

---

[5] United States Census Bureau, U.S. Department of Commerce, *available at* quickfacts.census.gov. The Monroe Division includes Caldwell, East Carroll, Franklin, Jackson, Lincoln, Madison, Morehouse, Ouachita, Richland, Tensas, Union, and West Carroll Parishes.

of over 200,000 people, and the Shreveport Division has an approximate population of 510,000.[6] The Court is confident that few, if any, prospective jurors in Shreveport know who the Defendants are, let alone have prior knowledge of the facts of the case. Thus, the pretrial publicity factor weighs heavily in favor of holding trial in Shreveport.

## IV. CONCLUSION

After reviewing the relevant factors for an intradistrict transfer of this case, the Court believes the ends of justice will be best served by holding trial in Shreveport. This decision reflects the consideration of Defendants' argument involving the convenience of a Monroe trial, the pre-set criminal trial in Monroe in front of the resident judge, and the added expense and difficulty of selecting a jury in Monroe, given the extensive media coverage of the initial guilty verdict and the post-trial issues involving Eddie Hakim and the improper relationship. Therefore, upon due consideration, Defendants' motion for transfer within the district is hereby **DENIED**.

**THUS DONE AND SIGNED,** Shreveport, Louisiana, this the 12th day of April, 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[6] United States Census Bureau, U.S. Department of Commerce, *available at* quickfacts.census.gov. The Shreveport Division includes Bienville, Bossier, Caddo, Claiborne, DeSoto, Red River, Sabine, and Webster Parishes.